JAMENS v AVON TOWNSHIP

1. Zoning—Proposed Use—Reasonable Use.

A proposed use of land should be permitted if reasonable under all the circumstances, even if present zoning is not unreasonable or confiscatory.

2. Appeal and Error—Equity—De Novo Review.

The Court of Appeals examines equity cases *de novo,* but accords great weight to the findings of the trial judge.

3. Zoning—Landfills—Reasonable Use.

A trial judge's finding in a zoning case that a proposed excavation and landfill operation is a reasonable use will not be disturbed where the evidence on the whole is supportive of such a conclusion.

4. Towns—Townships—Landfills—Department of Natural Resources—Reasonable Regulations.

A township may supplement requirements issued by the Department of Natural Resources, when the department authorizes a location as a landfill and prescribes operating procedures, with any additional reasonable regulations designed to eliminate any foreseeable health hazard, so long as the local regulations do not exclude what the state has permitted; also, a Department of Natural Resources licensee may not disregard local government zoning.

5. Injunction—Zoning—Landfills—Retention of Jurisdiction.

A trial court properly enjoined a township from preventing operation of a landfill where the court first found that the township's zoning was invalid as applied to the subject property and where the court retained jurisdiction which allows it to consider the extent of any conflict between provisions of town-

References for Points in Headnotes

[1, 3–7] 82 Am Jur 2d, Zoning and Planning § 15.
[2] 5 Am Jur 2d, Appeal and Error § 822.
[3–8] 61 Am Jur 2d, Pollution Control § 101.

ship ordinances regarding operations of a landfill and regulations of the Department of Natural Resources.

6. INJUNCTION—ZONING—ORDINANCES—EXHAUSTION OF LEGAL REMEDIES.

A plaintiff who sought to operate a landfill and who was eligible for a license from the state to do so but who was prevented from doing so by a denial of a zoning change by a township board of zoning appeals properly sought injunctive relief rather than pursuing legal remedies where the plaintiff's compliance with the zoning laws was prevented by the township ordinance provisions, thereby requiring the plaintiff to challenge the validity of the ordinances by way of injunction.

7. ZONING—PROPOSED USE—REASONABLE USE—USE NOT PERMITTED.

A court in a zoning case may, upon a finding that a proposed land use is reasonable, authorize a use not permitted by the local zoning regulations.

8. APPEAL AND ERROR—REMAND—JUDGMENT—FINDING OF FACTS—ENVIRONMENTAL PROTECTION ACT—STATUTES—COURT RULES.

A trial judge sitting without a jury is required by court rule to specify with some precision the subsidiary facts on which his ultimate conclusion of fact rests; therefore, a cause should be remanded for a more particularized showing of the facts upon which the trial court relied in fashioning its judgment where it is not clear whether the court considered the requirements of the Environmental Protection Act when authorizing the use of land for a landfill operation (MCLA 691.1201 *et seq.;* MSA 14.528[201] *et seq.,* GCR 1963, 517).

**Appeal from Oakland, Richard D. Kuhn, J. Submitted June 18, 1976, at Detroit. (Docket No. 23748.) Decided September 7, 1976. Leave to appeal applied for.**

Complaint by William H. Jamens, Roman Halanski, Arthur J. Hill, Louise A. Hill, Arthur J. Hill, Jr., and Thomas R. Hill, against the Township of Avon for injunctive relief, seeking to prevent the township from interfering with plaintiffs' use of their land as a landfill. Injunction granted. Defendant appeals. Remanded for further proceedings.

*Alspector, Sosin, Mittenthal & Barson, P. C.,* for plaintiffs.

*Patterson & Patterson, Whitfield, Manikoff & White* (by *Lawrence R. Ternan),* for defendant.

Before: R. M. MAHER, P. J., and D. C. RILEY and R. M. RYAN,* JJ.

D. C. RILEY, J. To chart the meandering course of the litigation presently before us would serve little useful purpose since much of the case law relied on by the parties has been supplanted by later judicial developments. Instead, we supply a factual background appropriate to a full understanding of those issues that still retain vitality.

Plaintiffs are land contract purchasers of a 27.5 acre parcel of vacant land situated in Avon Township, Oakland County, at the northeast intersection of Adams and Hamlin Roads. The property stands on high ground overlooking the Clinton River and, thus, is clearly visible from the surrounding open acreage adjoining it to the east, west and north. Across Hamlin Road, to the south of the subject parcel, is the Cardinal Landfill which has been in operation since the early 1940's. All of the described property, though zoned for large-lot residences, remains undeveloped except for an occupied dwelling adjacent to plaintiffs' property.

On September 13, 1971 the Board of Zoning Appeals of defendant, Avon Township, denied plaintiffs' application for a special use permit to allow sand and gravel extraction and the establishment of a sanitary landfill on the eastern 20 acres of their land. On May 8, 1972, plaintiffs brought

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

an action for injunctive relief before Judge Richard D. Kuhn in the Oakland County Circuit Court. Judge Kuhn sat as chancellor in equity without impaneling an advisory jury.

Abundant testimony was presented indicating that the subject parcel had served as an open dump about 15 to 20 years ago; the list of abandoned articles included household discards and industrial refuse, as well as barrels (open and sealed) containing chemical and paint waste. In fact, defense witness, Jerome Ebby, the housing and zoning inspector for Avon Township, testified from personal knowledge that he and others had, in the past, used portions of the parcel for dumping objectionable items not suitable for dumping at the Cardinal Landfill across Hamlin Road.

Except for the testimony of one witness, all of the evidence and testimony adduced at trial tended to show that indiscriminate dumping was probably confined to an area covering from 1-1/2 to 6 acres situated at the northeastern end of the subject parcel.

Judge Kuhn summarized his personal observation of the subject tract in paragraph 10 of his findings of fact:

"Pursuant to plaintiffs' motion, the Court viewed the subject parcel and the surrounding area. Said observation had at least as significant an impact on the Court as any of the testimony. The parcel in question had substantial visual evidence of dumping. Moreover, the terrain was extremely irregular with deep ruts, several holes, etc. Walking was extremely difficult. Also the ground was mainly sand and gravel, with limited vegetation and almost no trees, except around the perimeters.

"In summary, this was not at all the type of land on which people would want to build houses. Any comparison with the subject parcel and nearby Christian Hills

Subdivision is patently absurd. Among other things, Christian Hills contains many trees scattered throughout, and gentle rolling hills, as the name might imply."

During the pendency of the litigation, plaintiffs applied to the Department of Natural Resources (DNR) for a sanitary landfill operations license pursuant to the garbage and refuse disposal act, MCLA 325.291 *et seq.;* MSA 14.435(1) *et seq.* After a review of the proposed operation, limited to whether there would be damage to underground water, and whether gas buildups from the rotting refuse would constitute a potential hazard, the DNR decided to issue the license with conditions attached for plaintiffs' facility. However, actual issuance of the license was held in abeyance pending plaintiffs' satisfaction of "local requirements". It should be noted that the DNR is wholly unconcerned with the extraction operation that must precede a landfill; and that once a landfill begins operating, the DNR considers solely such on-site nuisance factors as odors, fencing and vermin.

One other embellishment must be added to complete the factual matrix: Avon Township enacted Ordinances 36 and 37 which together establish permit application procedures and operating regulations for soil excavation and landfills. These ordinances, to the extent pertinent, require that a permit be obtained prior to any excavation or filling; that any garbage and refuse filling be confined to land zoned "I" Industrial District; and that no filling occur within 500 feet of any existing residence or residentially zoned district unless written permission is obtained from adjacent residents and landowners.

On February 20, 1975, Judge Kuhn determined the zoning of the eastern 20 acres for single family residences to be unconstitutional and consequently

issued an injunction effective for a three-year period. By its terms, the injunction restrained defendant from interfering with plaintiffs' excavation and landfill operations subject to the conditions imposed by the DNR landfill license and " * * * subject to all applicable rules, regulations and ordinances as to operation". Also, plaintiffs were required to complete filling, to cover and grade the land, and then to convey the property to the township for use as a park within the three-year period. In addition, the court required plaintiffs to post an appropriate amount as security to satisfy any damage the defendant might incur by reason of plaintiffs' operations. Finally, Judge Kuhn retained jurisdiction over any disputes between the parties and their successors arising from the use of the 27-1/2 acre tract.

On appeal, defendant urges numerous grounds justifying dissolution of the injunction. Initially, defendant asserts the trial court erred in declaring unconstitutional the residential zoning classification of plaintiffs' 20 acre parcel.

With regard to this issue, *Sabo v Monroe Twp,* 394 Mich 531; 232 NW2d 584 (1975), and companion cases *Smookler v Wheatfield Twp,* 394 Mich 574; 232 NW2d 616 (1975), and *Nickola v Grand Blanc Twp,* 394 Mich 589; 232 NW2d 604 (1975), established a new standard by which to measure the validity of a zoning ordinance. Under *Sabo,*

"Even if present zoning is not unreasonable or confiscatory, a proposed use should be permitted if reasonable under all the circumstances." (Footnotes omitted.) 394 Mich at 536–537.

See *Kropf v Sterling Heights,* 391 Mich 139, 164; 215 NW2d 179 (1974) (concurring opinion), *Werkhoven v Grandville (On Remand),* 65 Mich App

741; 238 NW2d 392 (1975), *reversing* 61 Mich App 200; 232 NW2d 356 (1975), *Alastra v City of Warren,* 68 Mich App 594; 243 NW2d 675 (1976).

Thus, *Sabo, supra,* renders irrelevant the voluminous evidence gathered in the proceedings below on the issue of whether the present zoning of the subject parcel for single family residences is reasonable. Similarly, under *Sabo,* the testimony regarding the feasibility of contructing residences on plaintiffs' land becomes mere surplusage. Even though *Sabo* and its progeny would appear to eviscerate most zoning ordinances they encounter by requiring a showing of the mere reasonableness of the proposed use,[1] this Court is constrained to adhere to *Sabo.* This is so even though *Sabo* garnered less than a majority consensus of Supreme Court Justices. *Negri v Slotkin,* 397 Mich 105; 244 NW2d 98 (1976).

Focusing, then, on the reasonableness of the proposed use, we see no reason to upset the determination of the lower court. While this Court examines chancery cases *de novo, Biske v City of Troy,* 381 Mich 611; 166 NW2d 453 (1969), *Kropf, supra,* at 152, we nonetheless accord great weight to the findings of the trial judge who personally viewed the tract in question, and who was uniquely situated to assess the witnesses' credibility and demeanor as they relayed their testimony at trial. *Id* at 164.

In reaching his decision, Judge Kuhn relied not only on the condition of the subject parcel itself, but on its proximity to the Cardinal Landfill, and on the concurrent deleterious effect of the Cardi-

[1] For a scholarly analysis which looks askance at the changes inspired by the *Sabo* and *Kropf* (concurring opinion), *supra,* line of decisions, see Cunningham, *Rezoning by Amendment as an Administrative or Quasi-Judicial Act: the "New Look" in Michigan Zoning,* 73 Mich L Rev 1341 (1975).

nal Landfill during the remainder of its anticipated operation. All witnesses save plaintiff, Roman Halanski, were of the opinion that the Cardinal Landfill would be completed within 3-1/2 years. Nonetheless, the trial court could well conclude from the recent construction at the Cardinal site, costing in excess of $200,000, that Cardinal may be in operation for a period considerably greater than 3-1/2 years. Since during that time the noise, odors and unsightliness of the Cardinal operation would quite likely inhibit residential development in its immediate environs, the fact finder could well determine, based on all the evidence, that the excavation and operation of a landfill for a 3 year period would pose no significantly greater burden on the surrounding land than would Cardinal alone. Therefore, we find the evidence on the whole supportive of the conclusion that the proposed excavation and landfill operation is reasonable.

Defendant next contends that the chancellor, by enjoining interference with plaintiffs' excavation and landfill operations, failed to take into account the township's valid ordinances regulating such operations. Defendant further argues that even though the lower court could properly invalidate the parcel's single family residential classification, it should not have ignored local ordinances regulating excavations and landfills in prescribing relief.

While it is true that the court below did not rule specifically on the validity of Ordinances No. 36 and 37, a fair reading of the record reveals that the trial judge did consider them in framing his decree. By the terms of the injunction, the court authorized plaintiffs' excavation and landfill activities " * * * subject to all applicable * * * ordi-

nances as to operation". Moreover, the court retained jurisdiction over controversies arising from the use of the subject tract.

Such an approach parallels the relevant decisional law. The rule we distill from *Waterford Processing & Reclaiming Co v Waterford Twp,* 25 Mich App 507; 181 NW2d 675 (1970), as refined by *Haring Twp v City of Cadillac,* 35 Mich App 260; 192 NW2d 384 (1971), and *Dettore v Brighton Twp,* 58 Mich App 652; 228 NW2d 508 (1975), is twofold: First, once the Department of Natural Resources pursuant to the garbage and refuse disposal act, MCLA 325.291 *et seq.;* MSA 14.435(1) *et seq.,* has authorized a particular location as a landfill and has prescribed operating procedures, townships may supplement the DNR requirements with " * * * any additional reasonable regulations designed to eliminate any foreseeable health hazard. However, these local regulations may not *exclude* what the state has permitted". *Waterford, supra* at 511. (Emphasis in original.) Second, DNR licensees may not disregard local government zoning.

In applying the rule of *Waterford, Haring Twp,* and *Dettore, supra,* to the case at bar, we find a substantial identity of interests between the state and local government regulations. The testimony of Tom Work, a solid waste management engineer for the DNR, indicates that during the DNR's review of the landfill proposal, it considered numerous factors for the protection of the ground and surface water and prevention of noxious gas emissions. While the DNR does not consider the effect of proposed landfills on local land use patterns, the DNR's regulation of landfill operations appears to require the same types of controls of nuisance factors (odors, blowing debris and noise) as Avon Township Ordinance No. 37, § 5.

Thus, the trial court properly enjoined defendant's interference with regard to plaintiffs' landfill operations. Once the court invalidated the township's zoning as applied to the subject parcel, plaintiffs would have been entitled to a township landfill permit, as in *Waterford, supra.* Moreover, the court's retention of jurisdiction allows it to consider the extent of the conflict between the DNR regulations and the provisions of Township Ordinances No. 36 and 37 which restrict excavation and landfill operations to industrial zones and which require the signatures of persons residing within 500 feet of such operations.

We do not find persuasive defendant's argument that plaintiffs should first have exhausted their legal remedies before seeking injunctive relief. Clearly, the interlocking provisions of Ordinances 36 and 37 prevented plaintiffs' compliance with the zoning laws and required plaintiffs to challenge the validity of the ordinances by way of injunction. *Keller v Farmington Twp,* 358 Mich 106, 110; 99 NW2d 578 (1959), *cf., Dettore, supra,* at 658–659.

Though the trial court's actions regarding the landfill and the attendant DNR license satisfy our examination, the question remains whether, as defendant argues, the court engaged in judicial legislation by deciding for the township where a sand and gravel operation would be located, thus, in effect, altering the defendant's zoning map and land use plan. Under *Sabo, supra,* however, the trial court upon a finding that the proposed use is reasonable can authorize a use not permitted by the township. In *Sabo* and its companion cases, the Supreme Court affirmed this Court in permitting uses (mobile home parks) expressly excluded from the use district in which plaintiffs' property was

situated. Similar reasoning compels the conclusion that the court below properly authorized the excavation despite the ban on such operations in all but industrial zones.

The final issue presented focuses on the sufficiency of the trial court's factual findings in relation to the Environmental Protection Act (EPA), MCLA 691.1201 *et seq.;* MSA 14.528(201) *et seq.,* as interpreted by *Ray v Mason County Drain Commissioner,* 393 Mich 294; 224 NW2d 883 (1975). The defendant quotes, from an unnamed source, a ruling made by the trial judge on March 19, 1975, in response to defendant's motion for amendment of its answer or for a new trial, rehearing and/or amendment of the final order of injunction:

" * * * the Court is convinced that while it was not specifically raised, the Environmental Protection Act * * * was under consideration during the trial and in the findings of this Court * * * ."

It is difficult to determine, however, whether the trial judge denied the motion because it was untimely[2] under GCR 1963, 118.1, or because the judge had already taken into account the requirements of the EPA. If, in fact, the denial was based on the latter ground, namely, the court's consideration of the EPA's requirements, we hold the trial judge failed to satisfy the standard of specificity enunciated in *Ray, supra.*

The trial judge's factual findings relate princi-

---

[2] In the event the court denied defendant's motion to amend because it was not seasonably made, the interests of justice would nonetheless appear to require that leave to amend be granted, GCR 1963, 118.1. Because of "[t]he overriding need to achieve finality", *Eyde v Michigan,* 393 Mich 453, 455; 225 NW2d 1 (1975), and our concern with the protection of the environment, *Id* at 455–456, we suggest that the judge, in keeping with the strictures of the EPA and *Ray, supra,* specify those factual findings upon which he actually relied in determining the propriety of injunctive relief.

pally to the feasibility of residential construction on plaintiffs' property. The only mention of the environmental impact of plaintiffs' proposed use are contained in paragraphs 13 and 16 of the court's findings of fact:

"Due to the proximity of the Cardinal landfill to the subject parcel, the immediate vicinity which would be affected by a landfill on the subject parcel is identical to the immediate vicinity affected by the Cardinal landfill.

\*  \*  \*

"Based on paragraphs 12–15 above, the Court finds that plaintiffs' proposed use of the subject parcel would in no way be detrimental to the surrounding property."

Clearly, " \* \* \* the trial judge's conclusory statement[s do] not measure up to the requirements for findings of fact necessary to insure that the EPA fulfills those goals for which it was enacted", *Ray, supra,* at 303; nor do the statements satisfy GCR 1963, 517 which requires the judge in actions tried without a jury to specify with some precision the subsidiary facts on which the ultimate conclusion of fact rests. *Id* at 301–302, *Powell v Collias,* 59 Mich App 709, 716; 229 NW2d 897 (1975).

It follows, then, that we must remand this cause to the trial court for a more particularized showing, consistent with the dictates of *Ray, supra,* of the facts on which the court actually relied in fashioning its decree. While we do not mandate any specific degree of elaboration, we commend to the court's attention the opinion rendered by Circuit Judge Allan C. Miller in *Irish v Green,* Emmet County Circuit Court, No. 162-3, July 15, 1972, reported in the appendix to *Ray, supra,* at 314–323, as a paradigm for the court's guidance.

Remanded for proceedings consistent with this opinion.