GULYAS v GULYAS

Opinion of D. E. Holbrook, Jr., P. J.

1. Infants—Statutes—Child Custody Orders—Appeal and Error
—Weight of Evidence—Abuse of Discretion—Clear Error.

All orders and judgments of a circuit court concerning child
custody disputes should be affirmed on appeal unless the trial
judge has made findings of fact against the great weight of the
evidence or committed a palpable abuse of discretion or a clear
legal error on a major issue (MCLA 722.28; MSA 25.312[8]).

Opinion of N. J. Kaufman, J.

2. Appeal and Error—Dependent Children—Custody Appeals—
Rehearing Orders—Abdicating Responsibility—Abuse of
Discretion.

The Court of Appeals examines child custody appeals within the
context of the circumstances developed below; it may neither
reshape custody orders to suit its own brand of appellate
justice, nor abdicate its judicial responsibility to determine the
child's best interests by casually affixing the label "no abuse of
discretion" to a clearly improper result.

3. Infants—Child Custody—Expression of Preference—Courts—
Discretion.

The difficult task of garnering truthful information from a child
of tender years concerning his or her preference in a child
custody dispute is generally best left to the discretion of the
trial judge who is dealing directly with the parties and the
child.

4. Infants—Custody—In Camera Conversations—Stipulations—
Record—Preserving Question.

Failure of a trial court to disclose on the record the content of an

References for Points in Headnotes

[1, 2, 5] 4 Am Jur 2d, Appeal and Error § 136.
[3, 5-7] 42 Am Jur 2d, Infants §§ 44-47.
[4, 7] 5 Am Jur 2d, Appeal and Error § 550.
[8] 42 Am Jur 2d, Infants §§ 42, 47, 51.

*in camera* conversation between the judge and a child who was the subject of a custody petition was not reversible error where the parties had stipulated to the private conversation out of their presence, and neither party objected at trial, nor on appeal, to the judge's failure to disclose the contents of the discussion.

DISSENT BY D. C. RILEY, J.

5. APPEAL AND ERROR—RECORD—INFANTS—CUSTODY—IN CAMERA CONVERSATIONS—PREFERENCE—APPEAL AND ERROR.

*Failure of a trial court to provide the Court of Appeals with a substantive account of an* in camera *interview with a child concerning her preference in a custody action effectively frustrates meaningful appellate review of the court's decision and hence constitutes clear error on a major legal issue.*

6. INFANTS—CUSTODY—EXPRESSION OF PREFERENCE—BEST INTERESTS OF CHILD—RECORD.

*A trial court is obligated to relay a recorded summary of a child's expression of preference in a custody action where the court chooses to determine the child's preference out of the presence of the parties to assist it in deciding a close question of the child's best interests.*

7. APPEAL AND ERROR—INFANTS—CUSTODY—EXPRESSION OF PREFERENCE—RECORD ERROR—PRESERVING QUESTION—DE NOVO REVIEW.

*It is unwise to adopt a rule requiring a recorded objection or motion at trial to preserve for appeal a claim that a trial court erred in failing to record an* in camera *expression of preference by a child who was the subject of a custody action; it is incumbent upon a trial court to specify for the appellate record with some precision the subsidiary facts on which its ultimate conclusion of custody rests so that the Court of Appeals may make its de* novo *review.*

8. PARENT AND CHILD—INFANTS—CUSTODY—FITNESS OF PARENTS—COURTS—PERSONAL PHILOSOPHY—WORK ETHIC—BEST INTERESTS OF CHILD—WOMEN'S ROLE.

*A trial court deciding the relative "moral fitness" of the supplicants in a child custody dispute should not use the term as a means of imposing on them its personal philosophical beliefs regarding the work ethic; nor should a court use "the best interests of the child" as a screen with which to hide outmoded notions of a woman's role being near hearth and home.*

Appeal from Wayne, George T. Martin, J. Submitted October 14, 1976, at Detroit. (Docket No. 28160.) Decided April 19, 1977. Leave to appeal applied for.

Petition by Esther Gulyas for custody of her and the defendant Kenneth S. Gulyas' six-year-old child. Order awarding custody to the defendant. Plaintiff appeals by leave granted. Affirmed.

*Lippitt, Perlove, Varga & Zack* (by *Warren J. Perlove* and *Leslie C. Schefman),* for plaintiff.

*Paul C. Perovich,* for defendant.

Before: D. E. HOLBROOK, JR., P. J., and N. J. KAUFMAN and D. C. RILEY, JJ.

D. E. HOLBROOK, JR., P. J. Plaintiff appeals from the opinion and order of the trial court awarding custody of the parties' 6-year-old daughter to the defendant, pursuant to the provisions of the child custody act of 1970.

It is well settled that, with respect to child custody disputes, all orders and judgments of the circuit court should be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. MCLA 722.28; MSA 25.312(8).

MCLA 722.25; MSA 25.312(5) provides in pertinent part as follows: "When the dispute is between the parents * * * the best interests of the child shall control."

MCLA 722.23; MSA 25.312(3) defines "best interests of the child" to mean "the sum total of the following findings to be considered, evaluated and determined by the court: * * * ". The section thereafter enumerates nine specific factors which

the court shall consider together with a final factor which reads: "(j) any other factor considered by the court to be relative to a particular child custody dispute."

In reviewing the trial court's findings with regard to the factors to be considered the trial judge found the competing parties to be equal with respect to subprovisions (a), (c), (f), (g) and (h). The court further found that the evidence weighed in the defendant-father's favor as to subprovisions (b), (d) and (e). The court's findings with respect to (b), (d) and (e) read as follows:

"2. Both parties have the capacity to give love and affection to the child but the wife's career and need for obtaining a better livelihood heretofore has diminished her manifested ability to care for the child other than in Day Care homes. Her disposition towards the child is shown by her testimony that she would give up her job if she were awarded the child. Whether she actually would do so is a question. Heretofore she obviously felt that her job would not interfere with the child's care.

\* \* \*

"4. The child was with the husband after the wife left and cared for by his mother. For five months, the child was in New York. Since October 2, 1975, the child has been with the father in Michigan. She has been attending a private school in Michigan, and has received care from the husband's mother with whom they live. There is a desirability of maintaining continuity of stable home life for the child. Her present residence appears to provide a stable and satisfactory environment.

"5. The permanence of the husband's home as a family unit appears to be slightly better than that of the wife. The wife's employment is subject to transfer to another city, albeit she testified she can refuse to accept a transfer. Previously, she accepted a transfer."

The court also took into consideration the reasonable preference of the child which is borne out

by the following statement in the court's written opinion:

"The reasonable preference of the child was disclosed to the court in a private interview with the child on January 15, 1975 by stipulation of the attorneys. Without wishing to lessen either parent's love for the child by divulging the child's preference, the court is taking the child's preference into consideration."

Other factors considered by the court to be relevant appear in the court's opinion as follows:

"As to other factors of consideration, this court is of the opinion that the mother of the child is an energetic and ambitious career woman. She testified as to her work hours. She allegedly is a supervisor of seventeen offices in Buffalo and surrounding area while her new husband travels about the state of New York in a supervisory capacity also for H & R Block. This court is of the opinion that the father of the child is perhaps less ambitious than the mother, but is more of a homebody.

"In summary, a totalling of the evaluations of the factors set forth in the Child Custody Act is convincing that the best interests of the child, Tiffany, would be served by awarding her custody to her father, with the right of reasonable visitation accorded to the mother."

Having reviewed the transcript testimony taken in these proceedings and comparing same to the trial court's findings we are unable to say that the trial judge made findings of fact against the great weight of evidence, committed a palpable abuse of discretion or clearly legally erred on a major issue. Accordingly, the judgment of the trial court is affirmed. Costs to appellee.

N. J. KAUFMAN *(concurring).* While I concur in
Judge D. E. HOLBROOK, JR'S. opinion, I wish to add
a word in response to the dissent.

"A judge agonizes more about reaching the right
result in a contested custody issue than about any other
type of decision he renders."[1]

Plainly enough, all the potentialities envisaged
by this realization are embodied in this case. Con-
cededly, the questions presented on appeal by such
cases are difficult. On the one hand, this Court
should scrupulously avoid scuttling the clear statu-
tory mandate contained in MCLA 722.28; MSA
25.312(8)[2], which, of course, limits our appellate
function, by reshaping custody orders based upon
our own particular brand of appellate justice. On
the other hand, to countenance a clearly improper
result by casually affixing the label "no abuse of
discretion" is to abdicate our judicial responsibility
of determining the child's best interests and, in
effect, amounts to no more than taking the easy
way out. What is clear, then, is that this Court
must examine each case closely based upon the
context of circumstances developed below with a
clear recognition of both of these propositions.
Doing so, I must affirm.

Experience amply attests that the trial judge's
interview with the child is, at best, a difficult
method of garnering truthful information. A par-
ticular instance will illustrate my thought.

To begin with, let us suppose we have a child of

---

[1] *Fritts v Krugh,* 354 Mich 97, 101; 92 NW2d 604 (1958).

[2] MCLA 722.28; MSA 25.312(8) reads:
"Sec. 8. To expedite the resolution of a child custody dispute by
prompt and final adjudication, all orders and judgments of the circuit
court shall be affirmed on appeal unless the trial judge made findings
of fact against the great weight of evidence or committed a palpable
abuse of discretion or a clear legal error on a major issue."

the tender age of six, as we do here, appearing in the court room. The child is undoubtedly dressed in his best attire, the parent having custody at the time, to enhance his or her standing with the trial judge, will see to that. Almost invariably the child has been enticed by each parent in the hope that he will speak favorably towards them to the judge. It is inevitable that upon entering the judge's chambers the pressure of the entire situation causes great trepidation in the child.

Faced with this situation, the task of the trial judge is twofold. He must first allay the justifiable fears of the child while, at the same time, he attempts to gain a true reflection of the child's preference. The usual response of a trial judge to this situation is to inform the child that all that is said to him in chambers will be held strictly in confidence. The trial judge may well justify his course of action on two grounds: (1) as noted above, to gain both the child's confidence and a truthful expression of his preference, and (2) not out of solicitude for the jilted parent's ego but, rather, to protect the fragile emotional psyche of a six-year-old child who, after disclosure, might have difficulty facing the rejected parent and still, lest we forget, will quite possibly be living with this parent or at some juncture might return to the custody of that parent.

This illustration is offered not because it suggests the appropriate response by this Court in all instances but, instead, to show that the importance and extreme delicacy of this type of situation is, generally, best left to the discretion of the trial judge who is dealing directly with the parties and the child. Were the rule otherwise, I think it clear from the illustration above that a trial judge might well attempt to avoid the conversation with the child.

The difficulty in labeling this course of conduct reversible error is particularly true in the present case. Here, the parties stipulated to the *in camera* conversation between the trial judge and the child. The stipulation also provided that neither the plaintiff nor her counsel would be in attendance during the interview. Moreover, neither party objected to the trial judge's failure to disclose the contents of the discussion; nor has the plaintiff even raised this issue on appeal. Under these circumstances, where the failure to disclose could well be in the child's best interest, I can hardly call this reversible error.

Furthermore, I fail to perceive any reason for disclosure where it would not cause reversal of the trial judge's decision. The case was so close that even were the child's preference the mother, I would not conclude that the trial judge's decision was against the great weight of the evidence.

Lastly, I wish to reflect on several of the comments made in the dissent on the evidence. I must, again, emphasize that the previously cited statute makes it clear that it is not our function to cast a roving judicial eye to discover evidence to support our particular position. We must deal with the record as presented, not with the record as we would like it to read. I am of the view that the comments made by the trial judge were justified and supported by ample evidence on the record. Accordingly, I concur in Judge D. E. Holbrook Jr.'s opinion.

D. E. HOLBROOK, JR., P. J., concurred in the concurring opinion.

D. C. RILEY, J. *(dissenting)*. Once again this Court must venture into the maelstrom of a hotly

contested child custody dispute. We are asked to decide the fate of six-year-old Tiffany Gulyas, daughter of Esther and Kenneth Gulyas who are plaintiff and defendant herein.

In an effort to determine the child's "best interests", MCLA 722.23; MSA 25.312(3), the lower court held an evidentiary hearing attended by plaintiff, defendant, and their respective witnesses and attorneys. Although the statute would permit it, MCLA 722.27(e), MSA 25.312(7)(e), the judge appointed neither guardian ad litem nor counsel to represent the child. Instead, the judge chose an *in camera* chat with Tiffany to elicit her "reasonable preference". MCLA 722.23(i); MSA 25.312(3)(i).

Out of solicitude for the feelings of the rejected parent, the court declined to reveal Tiffany's choice. However, the judge indicated in his written opinion that the child's wishes were being taken into account. Ultimately, the court awarded custody to defendant.

While I appreciate the court's concern that revelation of the child's preference might endanger the relationship between Tiffany and the parent who was not chosen, I believe the failure to provide this Court with a substantive account of the *in camera* interview effectively frustrates meaningful appellate review, and hence constitutes "clear error on a major legal issue". MCLA 722.28; MSA 25.312(8). Where, as here, "[t]he question of proper custody is close, and an expression of preference by an intelligent, unbiased child might be the determining factor in deciding what the 'best interests' of the child are", *In re Custody of James B*, 66 Mich App 133, 134; 238 NW2d 550 (1975), the trial court, once it chooses to determine the child's preference, is obliged to relay the same to this Court. See *Bowler v Bowler,* 351 Mich 398,

406–407; 88 NW2d 505 (1958) ("Any technical objections to such informal interviews are usually waived by the parties, or may be met by the presence of counsel for both parties in chambers *and a judicial summary of the judge's findings later upon the record."* [Italics added.]), *Oakes v Oakes,* 45 Ill App 2d 387; 195 NE2d 840 (1964), *Callen v Gill,* 7 NJ 312; 81 A2d 495 (1951), *Strain v Strain,* 95 Idaho 904; 523 P2d 36 (1974), and Annotation, 99 ALR2d 954, § 4, pp 958, 959.

Although *Bowler* and *Oakes, supra,* employ language suggesting the need for objection or motion to preserve an appellate record, it is unwise to adopt a no-objection, no-error rule given our paramount concern for Tiffany's best interests, the absence of counsel on her behalf, and the mandate of GCR 1963, 517.1, which requires a trial court in nonjury cases "to specify with some precision the subsidiary facts on which the ultimate conclusion of fact rests". *Jamens v Avon Township,* 71 Mich App 70; 246 NW2d 410 (1976), *Ray v Mason County Drain Commissioner,* 393 Mich 294, 301–302; 224 NW2d 883 (1975), and *Zawisa v Zawisa,* 61 Mich App 1; 232 NW2d 275 (1975). In addition, since error may possibly arise from an *in camera* interview with a child, see, *e.g., Burghdoff v Burghdoff,* 66 Mich App 608, 613–614; 239 NW2d 679 (1976), it is incumbent on the lower court to preserve an adequate record for appellate examination. In light of this Court's obligation to review child custody cases *de novo, Outcalt v Outcalt,* 40 Mich App 392, 394; 198 NW2d 779 (1972), *Bahr v Bahr,* 60 Mich App 354, 360; 230 NW2d 430 (1975), I would reverse and remand this cause to the trial court to outline the substantive content of his interview with Tiffany.

If, on remand, the court is unable to state with

reasonable particularity the nature of his conver-
sation with the child, other than merely to indi-
cate Tiffany's preference, the lower court (or else a
child psychologist appointed for the purpose,
MCLA 722.27(d); MSA 25.312(7)(d)) should arrange
a new interview with the child which should be
transcribed. If, however, the court is able to sup-
plement the record by resort to memory, and if
Tiffany in fact expressed a preference to live with
her mother, then the trial judge should indicate
with reference to the litany of statutory factors,
MCLA 722.23; MSA 25.312(3), why the child's
interests would best be served by disregarding her
stated choice. This is not to suggest that the child's
predilection should always hold sway, but rather,
that the child's preference should be accorded
greater deference where many of the other statu-
tory factors do not weigh heavily in the judge's
decision. *In re Custody of James B, supra.*

Another disturbing feature of this case must be
addressed. That is, whether, as plaintiff contends,
the lower court committed clear legal error or
palpably abused its discretion in awarding custody
to defendant for the sole reason that plaintiff is a
successful career woman.

The record demonstrates that Esther Gulyas is
employed as a regional manager of 17 offices of H
& R Block, a tax preparation firm. She began
working for the company in the Detroit metropoli-
tan area but was later transferred to the Buffalo,
New York, region. She testified at the hearing that
she works 40 to 50 hours a week during tax season
and 10 to 30 hours a week the rest of the year.
She also indicated that she would refuse reassign-
ment to another city and would quit her job, if
necessary, to spend more time with Tiffany.

A careful reading of the lower court's opinion

clearly demonstrates that the court was especially preoccupied with Esther Gulyas's job status. The judge in his opening paragraph cites defendant's displeasure with plaintiff's career as the chief factor which precipitated the breakdown of the marriage. Moreover, in examining the various statutory factors which together comprise the child's "best interests", the court repeatedly emphasized plaintiff's employment.

With regard to the competing parties' ability and disposition to give the child love, affection and guidance, MCLA 722.23(b); MSA 25.312(3)(b), the trial judge noted that plaintiff's "career and need for obtaining a better livelihood has diminished her manifested ability to care for the child other than in Day Care homes". However, the judge did not remark upon defendant's inability personally to care for the child during his working hours. In addition, the court doubted plaintiff's statement that she would resign if need be to care for Tiffany. Apparently, the court would require that plaintiff cease working in order to show her sincerity; but the same is not expected of Kenneth Gulyas. Moreover, if plaintiff were to give up her career, she would confront a classic "Catch-22", for she would thereby lessen her "capacity to provide the child with food, clothing, medical care and other material needs". MCLA 722.23(c); MSA 25.312(3)(c).

The subject of plaintiff's career was again raised by the court in considering "the permanence, as a family unit", of the parties' respective homes, MCLA 722.23(e); MSA 25.312(3)(e), and once again the court doubted plaintiff's willingness to refuse a job transfer. Curiously, though, the court did not refer to testimony at the hearing which indicated that defendant's father, who lives in and owns the

house where Tiffany and defendant now reside, had recently undergone surgery for a brain tumor. Evidently, the court accepted at face value the testimony of defendant and his mother that defendant's father was completely recovered. Clearly, however, if defendant's father were to suffer medical complications or fail in rehabilitation, this would render Tiffany's present home a much less permanent family unit and would also diminish the ability of defendant's mother to care for Tiffany while defendant is at work, a relevant consideration under MCLA 722.23(b); MSA 25.312(3)(b).

The next factor the court considered, the moral fitness of the competing parties, MCLA 722.23(f); MSA 25.312(3)(f), was "evaluated as being about equal, with the husband more inclined towards *the old fashioned virtues*". (Emphasis added.) This rather cryptic comment is perhaps better understood by reference to the court's evaluation of MCLA 722.23(j); MSA 25.312(3)(j), the catch-all factor:

"As to other factors of consideration, this court is of the opinion that the mother of the child is *an energetic and ambitious career woman* * * * and that the father of the child is perhaps less ambitious than the mother, but is more of *a homebody.*" (Emphasis added.)

Apparently, the trial judge equates job status and the desire to advance in one's chosen field with morality. While the statute does not define "moral fitness", I do not believe that phrase should be used as a means of imposing on supplicants before the court one's personal, philosophical beliefs regarding the work ethic.

Perhaps, however, the judge meant to imply by his use of the words "old fashioned virtues" and "homebody" merely that defendant is better able

to spend time with Tiffany at home. If so, the record does not provide clear support for this conclusion. Defendant testified that he worked a standard 40-hour week. While plaintiff indicated her schedule was more irregular than defendant's, she also stated that her hours were considerably less during the off-season. It is only during tax time, approximately four months each year, that plaintiff works as much or more than defendant. In terms of hours worked per year, however, the testimony suggests, assuming equal vacation periods, that plaintiff works less than defendant. In light of this overall parity, I do not believe the plaintiff's career should have played such a dominant role in the court's decision.

While in the context of this case the lower court's undue emphasis on plaintiff's career and its apparent obliviousness to defendant's personal inability to care for Tiffany during working hours may not amount to an abuse of discretion under *Spalding v Spalding,* 355 Mich 382; 94 NW2d 810 (1959), it should be noted that the best interests of the child, as statutorily defined, should not be used as a screen with which to hide outmoded notions of a woman's role being near hearth and home.

A close scrutiny of the record shows that the factor of the parties' respective work obligations, like many of the express statutory criteria the court weighed, is not particularly significant. This tends to emphasize not only the importance of Tiffany's reasonable preference, but also the duty of the court to utilize the other statutory provisions at its disposal:

"There is, of course, the danger of self-serving testimony on behalf of the various contestants for the life of the child. Therefore, we would encourage independent investigation, including independent psychiatric evalua-

tion of the parties and the child and such other inquiries as are consistent with due process." *In Re Maria S Weldon,* 397 Mich 225, 277; 244 NW2d 827 (1976). (Coleman, J., concurring, but dissenting on other grounds.)

Since in the present case many of the statutory factors, which define the child's best interests, were not especially compelling, sound practice dictates resort to other avenues permitted by the statute. I urge the court on remand to heed the counsel of Justice Coleman, and I "request that the trial judge order an up-to-date investigation with a new custodial hearing at which both parties [and preferably counsel for Tiffany] may submit such evidence as they deem calculated to enlighten the trial judge in his task of determining what situation will be in the best interests of the child". *Roudabush v Roudabush,* 62 Mich App 391, 395; 233 NW2d 596 (1975).

Although a remand will assuredly delay final resolution of this case, a reviewing court has an obligation to examine *all* of the record, and a trial court has the corresponding duty to see that the record it supplies is as complete as possible. *Cf., Kailimai v Firestone Tire & Rubber Co,* 398 Mich 230; 247 NW2d 295 (1976). Unless and until the Supreme Court comes to grips with the problem (possibly by adopting the proposed court rule espoused by Justice O'Hara in his dissent in *Roudabush, supra*[1]) the ends of justice and Tiffany's

[1] "With all the fervor I can command I suggest that the Supreme Court forthwith under its rule-making power put an end to this cruel sham of entitling a change in child custody as an adversary proceeding between divorced parents as here. I would like to see the Supreme Court require that such cases be entitled 'In the Matter of the Custody of _____, a minor'. I would hope the trial bench would be directed to discard all this nonsense of rules of evidence related to ordinary adversary civil cases. Is the question still who is going to 'win', appellant or appellee, with the child a pawn of their animosities?

interests are best advanced by a full fledged examination of all the pertinent facts.

---

"I would hope the Court would require a concise statement of the proofs adduced and a compulsory inclusion of the report of the Friend of the Court after a bona fide investigation and that the rigmarole of strict evidentiary rules be eliminated. I would hope this would all be certified to the Court of Appeals of right before a separate and special rotating panel within 10 days of the conclusion of the testimony and it be required that this Court hand down its opinion within 20 days after submission." *Roudabush v Roudabush,* 62 Mich App 391, 396; 233 NW2d 596 (1975).