DETTORE v BRIGHTON TOWNSHIP

Docket No. 78-729. Submitted May 1, 1979, at Lansing.—Decided
August 6, 1979. Leave to appeal applied for.

Louis J. Dettore, now deceased, was the president of U.S. Build-
ing and Development Company, and the owner of a 70-acre
parcel of land in Brighton Township. For several years Dettore
operated a sand and gravel mine on this parcel, with the
permission of the township. This use is a pre-existing noncon-
forming use in an area now zoned R-1 residential. In 1973,
Dettore obtained a license from the Department of Natural
Resources to operate a sanitary landfill on 20 acres of the
parcel. The Brighton Township Board of Appeals, however,
refused to grant a zoning variance necessary to expand the
nonconforming use.

Dettore and U.S. Building and Development Company
brought an action against Brighton Township, the Township
Board of Appeals and the individual board members in the
Livingston Circuit Court for mandamus to compel the board to
issue the variance sought by the plaintiffs. The circuit court
judge denied the petition, ruling that the board had discretion-
ary power to prohibit the plaintiffs from exercising the permis-
sion granted by the DNR. The plaintiffs appealed. The Court of
Appeals, without reaching the merits of any other issues raised
by the plaintiffs in circuit court, affirmed the denial of manda-
mus. 58 Mich App 652 (1975).

The matter continued in circuit court on the issues not

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 82 Am Jur 2d, Zoning and Planning § 27.
[2] 82 Am Jur 2d, Zoning and Planning § 25.
[4] 82 Am Jur 2d, Zoning and Planning § 36.
[5] 5 Am Jur 2d, Appeal and Error § 839.
[6] 30 Am Jur 2d, Evidence § 1095.
[7] 82 Am Jur 2d, Zoning and Planning § 150.
[8, 9] 81 Am Jur 2d, Witnesses §§ 413, 414.
   12 Am Jur 2d, Zoning and Planning § 306.
[9] 75 Am Jur 2d, Trial § 173.
[10] 82 Am Jur 2d, Zoning and Planning § 35.
[11] 82 Am Jur 2d, Zoning and Planning § 61.

previously disposed of and the circuit court subsequently ordered the matter remanded to the board for a full hearing to determine whether the proposed use of the land as a sanitary landfill was reasonable under the circumstances and whether the township's zoning ordinance was unreasonable or confiscatory as applied to the property in question.

After a hearing, the board determined that the proposed use was unreasonable. The 11 reasons cited by the board in support of its conclusion were exactly the same as those it relied upon to deny the original request for a zoning variance. The board also determined that the township's zoning ordinance was reasonable and not confiscatory because the plaintiffs could continue to excavate sand and gravel from the land at a profit or, alternatively, could discontinue the mining operation and use the land for a residential development.

The plaintiffs appealed this decision to the Livingston Circuit Court, which affirmed the board's decision, William F. Ager, Jr., J. The plaintiffs appeal, raising numerous issues. Plaintiff Dettore is now represented by the fiduciaries of his estate. *Held:*

1. The trial court in reviewing the board's determination did apply the correct standard of review.

2. The defendant township's zoning ordinances seemingly would allow sanitary landfills in the township in areas zoned for industrial development. However, even if the ordinances did in legal or practical effect unreasonably exclude sanitary landfills, the plaintiffs would still have to show that their land in particular was properly suited for such use. The plaintiffs have not shown that the township's zoning of the land as residential was unreasonable or that application of the zoning ordinance results in confiscation of the property.

3. Upon receiving a state license to operate a sanitary landfill, plaintiffs still had the burden of obtaining a variance from the ordinance under which the land was zoned. Plaintiffs failed to satisfy their burden of proving that enforcement of the ordinance in this case would result in confiscation of the land.

4. It is common practice to allow witnesses to testify at township board meetings without being sworn. The plaintiffs voluntarily agreed to follow such procedure and cannot now be heard to complain that the testimony was incompetent.

5. The plaintiffs did not carry their burden of showing that if the ordinance were enforced the consequent restrictions on the property would preclude its use for any purposes to which it is reasonably adapted. Rather the evidence indicates that the

plaintiffs had the option of continuing a profitable sand and gravel operation or developing the land for residential use, a use for which the land was still suitable and for which it was zoned.

6. While there is a need for concern for the overall effects on the environment by the disposal of solid waste, there is nothing inherently contrary to public policy in the township's concern about the potentially deleterious effect of locating a sanitary landfill in the midst of a residential area.

7. The township Board of Appeals had jurisdiction to determine whether the zoning ordinance was unreasonable or confiscatory as applied to the land in question.

Affirmed.

1. Zoning — Reasonableness — Governmental Interest — Requested Change of Classification.

The correct test for judicial review in zoning cases is that the plaintiff requesting rezoning must show: first, that there is no reasonable governmental interest being advanced by the present zoning classification itself, or, second, that an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question.

2. Zoning — Ordinances — Presumption of Validity — Appeal and Error.

A zoning ordinance comes to an appellate court clothed with every presumption of validity.

3. Zoning — Ordinances — Burden of Proof — Reasonableness.

It is the burden of the party attacking a zoning ordinance to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property; it must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness.

4. Zoning — Ordinances — Reasonableness.

An aggrieved property owner, to sustain an attack on a zoning ordinance, must show that if the ordinance is enforced the consequent restrictions of his property preclude its use for any purposes to which it is reasonably adapted.

5. Appeal and Error — Equity — Supreme Court — Findings of Trial Judge.

An appellate court is inclined to give considerable weight to the findings of the trial judge in equity cases.

6. PARTIES — ADMISSIONS — QUESTION OF LAW — STATEMENT OF FACT.

It is well established that a party concession or admission concerning a question of law or the legal effect of a statute as opposed to a statement of fact is not binding on a court.

7. LICENSES — ZONING — GARBAGE AND REFUSE DISPOSAL — SANITARY LANDFILL — ORDINANCES — STATUTES.

Receipt of a state license, under a provision of the recently repealed garbage and refuse disposal act, to operate a sanitary landfill did not relieve the licensee from the responsibility of obtaining a license from the local governing body, securing a proper zoning permit and complying with all applicable local ordinances, codes, rules and regulations not in conflict with the act (MCL 325.292; MSA 14.435[2], since repealed).

8. ZONING — WITNESSES — TOWNSHIP BOARD MEETINGS — UNSWORN WITNESSES.

It is common practice in zoning cases to allow witnesses to testify at township board meetings without being sworn.

9. EVIDENCE — OBJECTION TO CLASS OF EVIDENCE — WAIVER — UNSWORN WITNESSES.

A party may waive his or her objection to a particular class of evidence by stipulation; where a witness gives testimony without first being sworn, an adverse party, by failing to object to that testimony, waives any objection.

10. ZONING — ORDINANCES — DISPARITY IN VALUE — DEPRECIATION IN VALUE.

A claim that a zoning ordinance is confiscatory as applied to a plaintiff's property is not proven by showing a disparity in value between uses or mere depreciation in value of the land.

11. ZONING — BOARD OF APPEALS — ORDINANCES — STATUTES.

A township board of zoning appeals is authorized to act upon all questions as they arise in the administration of a zoning ordinance (MCL 125.290; MSA 5.2963[20]).

*Klein & Bloom, P.C.,* for plaintiffs.

*Bauckham, Reed, Lang, Schaefer & Travis,* for defendants.

Before: M. F. CAVANAGH, P.J., and R. M. MAHER and W. VAN VALKENBURG,* JJ.

W. VAN VALKENBURG, J. The parties to this litigation are now before us for the second time, raising new issues whose resolution will hopefully end this lengthy zoning dispute. See this Court's prior opinion in *Dettore v Brighton Twp,* 58 Mich App 652; 228 NW2d 508 (1975).

Plaintiff Dettore owns a 70-acre parcel of land in defendant Brighton Township.[1] With defendant's permission, plaintiff has for several years operated a sand and gravel mine on his land, a pre-existing nonconforming use in an area now zoned R-1 residential.

On June 4, 1973, plaintiff obtained a license from the Department of Natural Resources to operate a sanitary landfill on 20 acres of his land. The Brighton Township Board of Appeals (the board), however, refused to grant plaintiff the zoning variance necessary to expand the scope of his nonconforming use. Plaintiff petitioned the Livingston County Circuit Court for a writ of mandamus to compel the board to issue the variance requested by plaintiff. The circuit judge denied the petition on April 1, 1974, ruling that the board had discretionary power to prohibit plaintiff from exercising the permission granted by the state licensing agency. Without reaching the merits of any other issues raised by plaintiff in circuit court, this Court affirmed the denial of the writ of mandamus. *Dettore, supra.*

Then, on February 26, 1975, the circuit court

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Although there are multiple parties in this litigation, this opinion refers to the parties in the singular with Dettore as plaintiff and the township as defendant.

ordered this cause remanded to the board for a full hearing to determine whether plaintiff's proposed use of his land as a sanitary landfill was reasonable under the circumstances and whether defendant's zoning ordinance was unreasonable or confiscatory as applied to plaintiff's property. The hearing was held on April 6, 1976.

After considering the evidence and visiting plaintiff's proposed site and other landfills, the board ruled on July 7, 1976, that plaintiff's proposed use was unreasonable. The 11 reasons cited by the board in support of its conclusion were exactly the same as those it relied upon to deny plaintiff's original request for a zoning variance. See *Dettore, supra,* at 657, fn 4, for a list of those reasons. The board also held that defendant's zoning ordinance was reasonable and not confiscatory because plaintiff could continue to excavate sand and gravel from his land at a profit or, alternatively, could discontinue his mining operation and grade the land for a residential development.

Plaintiff appealed the board's decision to the circuit court, the parties stipulating that the court's decision would be based on the pleadings, briefs, the transcript of the board hearing, exhibits, and oral arguments. The circuit court affirmed the board's decision and plaintiff's appeal to this Court followed as of right.

The seven issues raised by plaintiff on appeal will be considered *seriatim.*

I. *In affirming the board's decision, did the trial court apply the wrong standard of review?*

The parties do not dispute that the applicable standard of review of requests for zoning variances at the time of the board hearing and decision was set forth in *Sabo v Monroe Twp,* 394 Mich 531; 232 NW2d 584 (1975):

"Even if present zoning is not unreasonable or confis-catory, a proposed use should be permitted if reasonable under all the circumstances. *Kropf v Sterling Heights,* 391 Mich 139, 164 ff.; 215 NW2d 179 (1974) (concurring opinion)." 394 Mich at 536-537. (Footnotes omitted.)

But in December, 1976, the Supreme Court over-ruled the *Sabo* standard in *Kirk v Tyrone Twp,* 398 Mich 429; 247 NW2d 848 (1976), and readopted the standard promulgated by the majority in *Kropf, supra.*

As first enunciated in *Kropf* and reinstated in *Kirk,* the appropriate test to be applied to zoning challenges is as follows:

" '[F]irst, that there is no reasonable governmental interest being advanced by the present zoning classifica-tion itself * * * or

"[S]econdly, that an ordinance may be unreasonable because of the purely arbitrary, capricious and un-founded exclusion of other types of legitimate land use from the area in question.' " 398 Mich at 439, quoting from *Kropf,* 391 Mich at 158.

The four rules for applying these principles are as follows:

"1. ' "[T]he ordinance comes to us clothed with every presumption of validity." '

"2. ' "[I]t is the burden of the party attacking to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property * * *. It must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness." '

"3. ' "Michigan has adopted the view that to sustain an attack on a zoning ordinance, an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions on his property preclude its use

for any purposes to which it is reasonably adapted." '

"4. ' "This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases." ' " 398 Mich at 439-440. (Citations omitted.)

See also *Ed Zaagman, Inc v City of Kentwood,* 406 Mich 137; 277 NW2d 475 (1979), reaffirming the standard approved in *Kirk.*

Plaintiff contends that this case should be remanded to the circuit court for reconsideration under the *Kirk* standard of review. We find that plaintiff has confused the trial judge's remand to the board, which was admittedly ordered and accomplished when *Sabo* was controlling, with the trial judge's findings and opinion on review of the board decision, which were not issued until February, 1978, well after *Kirk* had been decided.

In his findings and opinion, the trial judge clearly stated that *Kirk* was the controlling authority. He set forth the above-quoted principles from *Kirk* as a guide to his judicial review and proceeded to analyze and decide the case in light of those principles. This situation is clearly distinguishable from the one presented in *Michigan National Bank v Windsor Twp,* 76 Mich App 387; 256 NW2d 791 (1977), where the trial court did decide the case under *Sabo.* This Court therefore felt compelled to remand for reconsideration under the superseding *Kirk* principles.

II. *Are sanitary landfills totally excluded from defendant township and, if so, is plaintiff entitled to a zoning variance permitting him to create a sanitary landfill on property zoned residential?*

Plaintiff alleged in his original complaint that "the Brighton Township Zoning Ordinance does not provide for any area for a sanitary landfill, solid waste disposal area," an allegation which

defendant admitted in its answer. Plaintiff on appeal characterizes defendant's statement as a binding admission in its pleadings. See GCR 1963, 606. On the contrary, it is well established that a party concession or admission concerning a question of law or the legal effect of a statute as opposed to a statement of fact is not binding on the court. 2 Callaghan's Michigan Pleading & Practice (2d ed), § 21.44, p 43; *Thayer v Arnold,* 32 Mich 336, 341 (1875). *Cf., Michigan Health Care, Inc v Flagg Industries, Inc,* 67 Mich App 125, 130; 240 NW2d 295 (1976).

The trial judge ruled as follows on the issue of exclusion of sanitary land fills by defendant:

"There is no evidence in the record that Brighton Township is excluding sanitary landfills entirely by its zoning, or that it excludes them as a practical matter by restricting them to land which is unsuitable for that purpose. The Township's Master Plan does set aside areas designated as 'Natural Resource Districts' where sanitary landfills might be established. The record does not show that all requests for permits to establish sanitary landfills in these districts are systematically denied by the Brighton Board or that the areas zoned for this use are unsuitable for it.

"Plaintiff might argue that sanitary landfills are effectively excluded from Township land by the Township's Conservation of Natural Resources Ordinance, which allows only 'non-putrescible' fill that contains no building materials, no wood, no garbage, no refuse, and no tires. (It does not appear that plaintiff is making this claim.) These limitations, however, can be supported as valid public health measures, and would not preclude the operation of sanitary landfills absent the prohibited items."

Although the record below on this issue is minimal, our review of the defendant's zoning ordinances also tends to show that sanitary landfills

would be allowed in township areas zoned for industrial development. Brighton Township Zoning Code, article XIV.

We further note that, even if defendant's zoning ordinances did in legal or practical effect unreasonably exclude sanitary landfills, plaintiff would still have to show that his land in particular was properly suited for such a use. In *Bzovi v Livonia*, 350 Mich 489; 87 NW2d 110 (1957), the Supreme Court ruled that the defendant had unreasonably and unconstitutionally prohibited the construction of outdoor drive-in movie theaters within its boundaries. The Court nevertheless found that defendant's zoning designation of the plaintiff's property as an agricultural-residential district was reasonable and that defendant could thus legitimately exclude drive-in theaters from that particular area of the city. Compare *Lyon Sand & Gravel Co v Oakland Twp*, 33 Mich App 614; 190 NW2d 354 (1971), where this Court held that portions of the defendant's zoning ordinance regulating the mining of sand and gravel were invalid because they were unreasonable and confiscatory as applied to the plaintiff's land. Defendant was consequently enjoined from interfering with plaintiff's proposed use of his land for a sand and gravel mining operation.

In the instant case, plaintiff has not shown that defendant's zoning of his land as residential was unreasonable or that application of defendant's zoning ordinance results in confiscation of his property. See the discussion of Issue V, *infra.*

III. *Did defendant establish sufficient reasons to deny plaintiff a zoning variance where plaintiff had already been awarded a state permit to operate a sanitary landfill of his property?*

MCL 325.292; MSA 14.435(2), the provision of

the garbage and refuse disposal act applicable at the time this case was decided, provided that receipt of a state license to operate a sanitary landfill did not relieve the licensee from the responsibility of obtaining a license from the local governing body, securing a proper zoning permit and complying with all applicable local ordinances, codes, rules and regulations not in conflict with the act.[2] For cases interpreting the scope of this provision, see *Waterford Processing & Reclaiming Co v Waterford Twp,* 25 Mich App 507; 181 NW2d 675 (1970), *Haring Twp v Cadillac,* 35 Mich App 260; 192 NW2d 384 (1971), *Dettore, supra, Jamens v Avon Twp,* 71 Mich App 70; 246 NW2d 410 (1976), *rev'd* 78 Mich App 289; 259 NW2d 349 (1977), *Michigan Disposal, Inc v Augusta Twp,* 89 Mich App 557; 280 NW2d 596 (1979). *Cf., Nelson v Department of Natural Resources,* 88 Wis 2d 1; 276 NW2d 302 (1979).

Upon receiving a state license to operate a sanitary landfill, plaintiff still had the responsibility under MCL 325.292 of obtaining a variance from the ordinance under which his land was zoned residential. Applying the principles outlined in *Kropf,* see Issue I, *supra,* we conclude that plaintiff has failed to satisfy his burden of proving that defendant's enforcement of the ordinance in this case would result in confiscation of plaintiff's land.

---

[2] The garbage and refuse disposal act, MCL 325.291 *et seq.;* MSA 14.435(1) *et seq.,* was repealed by the enactment of a new Solid Waste Management Act, 1978 PA 641, § 37, effective January 11, 1979. This new act, MCL 299.401 *et seq.;* MSA 13.29(1) *et seq.,* provides for the creation of a state licensing agency in the Department of Natural Resources and for the preparation of enforceable county solid waste management plans to be submitted for approval to the director of the Department of Natural Resources. After a county plan is approved, the director may not issue a license for the development or operation of a new solid waste disposal area unless the facility complies with and is consistent with the applicable county plan. MCL 299.430(3); MSA 13.29(30)(3).

See the discussion of Issue V, *infra.* See also *Jamens, supra,* 78 Mich App 289, *rev'g* 71 Mich App 70.

The case upon which plaintiff relies, *Waterford, supra,* is readily distinguishable because the zoning ordinance applicable to the land for which a state permit had been issued already allowed the establishment of sanitary landfills. Unlike the situation in the instant case, the township in *Waterford* was attempting to exclude plaintiff's proposed sanitary landfill on grounds which conflicted with the state garbage and refuse disposal act.

IV. *Did the trial court err by relying on unsworn testimony at the board hearing in support of its decision?*

It is common practice in zoning cases to allow witnesses to testify at township board meetings without being sworn. The board hearing on April 6, 1976, was no exception to that general custom as the only witness testifying under oath was plaintiff's expert witness. Plaintiff's counsel was present at the hearing, questioned some of the unsworn witnesses, and made no objection to the procedure. On appeal to the circuit court, the parties indeed stipulated that the trial judge could use the transcript of the hearing in making his findings.

It is well settled that a party may waive his or her right to object to a particular class of evidence by stipulation. Furthermore, where a witness gives testimony without first being sworn, an adverse party, by failing to object to that testimony, waives any objection. *Mettetal v Hall,* 288 Mich 200, 207-208; 284 NW 698 (1939).

Plaintiff voluntarily selected the procedure he wished to follow before both the board and the

circuit court. He may not be heard to complain now that unsworn testimony was incompetent.

V. *Did the trial court err in ruling that plaintiff had failed to prove confiscation of his property by application of defendant's residential zoning ordinance?*

To support his argument of confiscation, plaintiff relies chiefly on the testimony of his expert witness, an engineer who stated that plaintiff's property would be rendered totally worthless at the termination of plaintiff's mining operation because no one would want to build residential property in a hole 100 feet deep with steeply sloping sides. This evidence was countered at the board hearing by testimony from the chief geologist of a competing gravel mining company. The geologist asserted that his company's policy was to convert mined property to residential and/or recreational purposes and that the company was willing to forego completely mining out a parcel of land in order to accomplish the conversion to another use.

The trial judge concluded that plaintiff was free to continue his profitable sand and gravel operation as a pre-existing nonconforming use, a use for which the land was well suited. He also accepted the board's alternative finding that the land, as it existed at the time of the hearing, was still suitable for residential purposes. Finally, the judge deemed speculative plaintiff's engineer's testimony regarding the projected worthlessness for residential purposes of plaintiff's mined-out property and ruled that the board could disregard it. The judge noted that plaintiff's engineer had not rejected the feasibility of all other potential uses besides a sanitary landfill.

Our review of the evidence also convinces us that plaintiff did not carry his burden under *Kirk*

of showing that, " ' "if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted." ' " *Kirk, supra,* 439. See *Armstrong v Ross Twp,* 82 Mich App 77, 83; 266 NW2d 674 (1978). Although plaintiff might derive more profit from a sanitary landfill than from other potential uses, "[a] showing of confiscation will not be justified by showing a disparity in value between uses" or mere depreciation in value of the land. *Kirk, supra,* at 444.

VI. *Was the trial court judgment denying plaintiff a zoning variance to permit creation of a sanitary landfill on his property against an established public policy?*

Plaintiff argues that, as a matter of public policy, the residents of a densely populated area should be required to bear the responsibility for disposal of their own solid waste and should not be allowed to exclude sanitary landfills. Defendant responds that the landfill requirements of the township are being adequately served by existing facilities and that it has the legal right to require plaintiff's compliance with local health and zoning regulations prior to issuance of a sanitary landfill permit.

While we recognize the serious social and environmental questions inherent in the issue of solid waste disposal, see *Philadelphia v New Jersey,* 437 US 617; 98 S Ct 2531; 57 L Ed 2d 475 (1978), we must also respect Michigan law which seeks to strike a balance among the various interests at stake. The garbage and refuse disposal act specifically provides that any person obtaining a state license to operate a sanitary landfill must comply with all applicable local laws, ordinances and regulations not in conflict with the act. MCL 325.292.

The state act also allows a local governing body to develop and enforce local ordinances and regulations concerning solid waste disposal which are equal to or more stringent than the provisions of the act. MCL 325.292.

Plaintiff's argument emphasizes the larger social need for sanitary landfills while downplaying the associated problems of environmental protection and economic or esthetic disruption of the immediately surrounding area. We find nothing inherently contrary to public policy in defendant's concern about the potentially deleterious effect of locating a sanitary landfill in the midst of a residential area. Accord, *Nelson, supra.*

VII. *Did the township Board of Appeals lack jurisdiction over plaintiff's case because plaintiff was seeking to use his property for a purpose which was forbidden by the township zoning ordinances?*

MCL 125.290; MSA 5.2963(20), the applicable provision of the township zoning act, MCL 125.271 *et seq.;* MSA 5.2963(1) *et seq.,* provides that a township board of appeals is authorized to "act upon all questions as they may arise in the administration of the zoning ordinance". Plaintiff contends that because sanitary landfills are totally excluded from Brighton Township under its zoning ordinance, the township Board of Appeals was not engaged in the "administration of the zoning ordinance" within the meaning of MCL 125.290.

Plaintiff's contention is without merit. For one thing, it has not been established that defendant totally excludes sanitary landfills. Second, plaintiff was applying for a variance to expand the scope of his already nonconforming use under an existing zoning ordinance classifying plaintiff's property as residential. The township Board of Appeals had

jurisdiction to determine whether that zoning ordinance was unreasonable or confiscatory as applied to plaintiff's land.

Affirmed. Costs to defendant.