## Charles Thayer and others v. William H. Arnold and another.

*Res adjudicata.* The question of the validity of the execution sale under which in part the complainants claim title to the farm in controversy is held to have been decisively adjudged against them in *10 Mich., 486,* and *22 Mich., 247.*

*Trustees: Direction to officer to levy: Estoppel.* Whether a direction by those holding title to a farm in trust, to an officer holding an execution against their grantor, to levy upon such farm, will estop them and their privies with notice from questioning the proceeding upon the point of want of title in such execution debtor, and of title in themselves:—*Quære?*

*Equitable estoppel: Proofs.* In this case, however, the proofs are held to fall short of establishing the fact of the giving of such direction, upon which it was sought to base such an equitable estoppel.

*Equitable estoppel: Interpretation of an instrument: Mortgage: Trust deed.* Whether those holding lands in trust, who have, in answering a bill filed against them in aid of an execution levy upon the lands against their grantor, refrained from setting forth the instrument given back by them to their grantor, but did maintain in substance that it operated to make the grant a mortgage rather than a conveyance in trust, are estopped, as against those who purchased at the execution sale on the faith of the construction so imputed, from asserting that such grant was any thing else than a mortgage:—*Quære?*

*Pleadings: Estoppel: Claim of title: Indistinct averments.* The answer, however, relied upon in this case as working such an equitable estoppel, is not sufficiently distinct and positive in its statements of the precise character of the interest of the defendants, to authorize any one to take any action in reliance upon it as an assertion that such interest was only a mortgage; and the true legal significance of the deed and defeasance in question in this case being difficult of determination, a party ought not to be held to a particular interpretation of them, which can only be

THAYER *v.* ARNOLD.

attributed to him by a very refined implication from ambiguous terms of his pleading.

*Written instruments:* *Admission of legal sense and effect: Estoppel.* An admission in a pleading of the legal sense and effect of an instrument in writing is not such an admission of matter of fact as can be made the ground of an estoppel.

*Trust deed: Authority to sell: Ratification: Evidence.* In this suit, between complainants claiming the farm in question by virtue of an execution sale and of conveyances from the heirs of the defendant in such execution, and defendants claiming the same through a deed given prior to such execution, in trust to indemnify sureties, and with authority to sell the same to carry out the trust, and a conveyance by such trustees, where the transactions out of which the controversy arose took place a good while ago, and the parties to them are nearly all dead, so that it is difficult to prove precisely what was contemplated by the trust and what was done under it, great weight is given to the action of the grantor in such trust deed in his life-time, in giving possession to the grantee of such trustees and relinquishing all his rights, and thereby ratifying what had been done.

Appeal in Chancery from Washtenaw Circuit.

*Felch & Grant, Alfred Russell* and *S. T. Douglass,* for complainants.

*O. Hawkins* and *G. V. N. Lothrop,* for defendants.

GRAVES, CH. J:

The litigation here concerns the right to two hundred acres of land near Dexter, and it is not a new one. The right to the same property was in dispute in *Gorham v. Wing, 10 Mich., 486,* and in *Gorham v. Arnold, 22 Mich., 247,* and a reference to those cases will explain the origin of the controversy, and many if not most of the material matters affecting it. The interest there claimed to be represented by Gorham is said in this case to be represented by complainants.

There are, it is true, some new features and claims. And we find among them on the side of complainants, the assertion of a right independent of any title based on the execution sale by the United States; and taking for granted the invalidity of the execution proceedings, the right so put forward rests on the claim that when the execution debtor, Thomas Lee,

died, he had, as grantor to Wing and McCauley in trust, an actual title or interest as against them, which descended to his heirs, and which long since became perfect and complete in equity by the discharge or satisfaction of the trust.

On the side of the defense we have a paper purporting to have been given by Thomas Lee to Wing and McCauley, July 10th, 1847, and which is claimed to be conclusive in favor of their right to make sale of the land as it was done.    This paper, whose genuineness has occasioned much dispute, is marked in the record as schedule No. 1.    The court below entered a decree of dismissal.    The complainants are understood now as propounding two theories:

*First*, That they are entitled to relief on the ground of title from Thomas Lee, through the sale to the United States under the execution in favor of the latter against him;

*Second*, In virtue of a right which existed in Thomas Lee as against Wing and McCauley, and which on the death of Thomas Lee went to his heirs, and is now represented by complainants; and as part of this theory it is insisted that William H. Arnold is not a *bona fide* holder against such right.

The court think the first ground was decisively adjudged in the former cases and is not now open to complainants.

The present record contains nothing to vary in any material degree the legal aspect of the point, and notwithstanding the able arguments submitted, no good reason is seen for reaching any different conclusion.    We must hence hold it as settled, that Thomas Lee had no leviable interest, and that the seizure and sale on the execution by the United States against him, were, under the circumstances, of no legal force.

And in saying this, the arguments to prove equitable estoppel are not overlooked.    These arguments proceed on two general theories.    The first is, that Wing, McCauley, Thomas Lee and *Ebenezer Arnold*, in an interview with deputy marshal Skinner, on the 6th of January, 1847, the day

of the levy, and prior to its being made, directed the officer to seize the land on the execution against Thomas Lee, and that they thereby estopped themselves and their privies with notice from questioning the proceedings upon the point of want of title in Lee, and of title in Wing and McCauley. If the facts supposed for the purpose of contending for an estoppel in this way were conceded, there would still be room for controversy. But we cannot regard the evidence as of force to sustain the reasoning.

The central facts rest upon Skinner's testimony, and this was given more than twenty years after the event.

He speaks only from memory, and no circumstance is related or can be implied to lend confidence to the accuracy of his recollection. Wing denies that he was present at any such interview, and he also swears that when the sale occurred not long after, he appeared and forbade it, and this is not disputed. Thomas Lee, McCauley and Ebenezer Arnold are dead, and the latter did not become interested, as it would seem, in the Lee farm until some three years later, when Wing and McCauley deeded to him. Skinner himself testifies guardedly and with reserve. He says: "My *recollection* is, that the levy was made at the request of Nelson H. Wing and William McCauley, they furnishing a description of the land. These gentlemen, with Ebenezer Arnold and Thomas Lee, *according to the best of my recollection, met me by appointment* at a hotel in Dexter, and the matter of the execution was talked over, but *I cannot recollect the particulars* of the *conversation.* It was at this meeting, *I think*, that the description of the land was furnished me." If this event actually occurred, if Wing, McCauley and Thomas Lee joined in directing the levy to be made, it was a transaction important to the interests of the government, and one very likely to be known to the United States attorney at Detroit, who had charge of the business.

But when we turn to the bill filed by the attorney in less than two months after *in aid of the levy*, and to avoid the effect of the deed from Lee to Wing and McCauley, we

observe that no allusion whatever is made to the circumstance; and it seems hard to account for this omission, except upon the supposition that no such fact had happened.

The fair result, upon the whole, is in favor of Wing's denial, and against the uncertain and hesitating memory of Skinner.

The second theory, as a ground of estoppel, is, that in answering the bill brought by the United States, in aid of the levy, and prior to the sale, Wing and McCauley refrained from setting forth the instrument given back to Thomas Lee when the deed was delivered, and then maintained in substance and effect that it operated to make the grant a mortgage, and not a conveyance in trust, and that the United States, in subsequently bidding off the premises, acted upon the faith of the construction so imputed, and hence that the title ought not to be challenged upon any claim by Wing and McCauley or William H. Arnold that the conveyance was not a mortgage.

If the materials suggested for this view were all admitted, there would still be difficulties in the way. But the matters relied on to lead to it, and the true state of the case, afford no footing for the doctrine advanced.

Lee held the defeasance from Wing and McCauley, and it was the badge of his right, and it was his right that the government under its levy was concerned about. Wing and McCauley were not interested to reduce or qualify the estate, which Lee's deed to them imported *prima facie,* and it was for the government, and not for them, to put the instrument in the case and insist upon a correct construction of it. The omission of Wing and McCauley to state it in their answer is not a fact to help towards an estoppel.

There is no doubt but that the language of the answer affords ground for arguing that the final construction given by Wing and McCauley to the defeasance was such as would in law make the conveyance a mortgage rather than one in trust. But there is nothing in the answer in this regard sufficiently distinct and positive to furnish solid ground for

reasoning one way or the other. The answer does in fact deny in terms that the conveyance was in the nature of a mortgage; but the purpose and nature of it are afterwards stated in a way to make the whole subject ambiguous. That the true legal significance of the matter was somewhat difficult cannot be doubted, when we remember how earnestly able counsel have disputed about it in this court; and it would be hardly just on any principle to take up this matter, confessedly so ambiguous in respect to its precise legal import as to have caused able counsel to earnestly and persistently disagree, and then hold the defendants to a particular interpretation, and one, too, only found to be theirs by means and as the result of a very refined, if not inaccurate criticism of the terms of their answer to the bill of the government.

But, however this may be, it seems pretty plain that the admission in the answer, if such it was, was of the legal sense and effect of the paper, and not of matter of fact, and in view of the case and the state of the question was not ground of estoppel.—*Rice v. Ruddiman, 10 Mich., 125; Pearce v. Grove, 3 Atkyns, 523; Brewster v. Striker, 2 Comstock, 19; Holbrook v. The Bank, 2 Curtis C. C. R., 244.*

A further suggestion by one of complainants' counsel may be noticed before leaving this branch of the case. It was, that the paper of July 10, 1847, now first brought to judicial attention, is evidence, if genuine, that Wing and McCauley did not construe the paper called a defeasance as did this court in *Gorham v. Arnold*, in regard to the power to sell. Whether Wing and McCauley supposed, or did not suppose the first paper legally sufficient in its terms to empower them to sell does not seem important. It was, or it was not, and this was a question of legal construction, and if it was legally sufficient, as we held in *Gorham v. Arnold*, then the second paper, which imports in clearer terms the right to sell, and may have been framed and given as a matter of mere caution, could not impair the power involved in the,

first.　The conveyance by Wing and McCauley was in fact not made until some time after the date specified in the second paper, and may therefore rest upon both or either.

In view of the request of one of complainants' counsel, that the court would allow the bill to be shaped so as to authorize an examination of complainants' claim under the execution sale, it has been thought admissible to notice the points connected with that claim.

Passing to the second ground on which complainants ask the interference of equity, we may inquire whether, upon the facts, Thomas Lee, at his death, which occurred in December, 1852, had any equitable right in this land as against Ebenezer Arnold, or Wing and McCauley. Because, if he had not, then his heirs took none, and complainants cannot claim any in their right.

In support of this ground of their claim complainants mainly rely on such evidence as is obtainable, to show the financial details of the old transactions concerning the liabilities and expenditures of Wing, McCauley and others, growing out of Lee's default, and the proceedings in and about the government suits thereby caused.

Much of this proof is confused, and in view of its purpose, far from satisfactory. It is very evident that Lee and his sureties, Wing, McCauley and Joseph Arnold, were intimate and somewhat confidential, and accustomed to consult together touching the claim of the government and their respective rights, interests and liabilities, and the ways and means of settlement, and that there was a general understanding among them as to their several relations and claims, and as to the course most proper to be taken.

After the lapse of so many years, and the death of nearly all the parties, it would be very unreasonable to expect the explanations which must have been very practicable when the events were recent. If an inquiry had been instituted just before the death of Thomas Lee, in regard to the actual arrangements and true state of things between him, Wing, McCauley and Arnold, the interior history of

their actual relations might have been accurately and minutely ascertained.

That is now impossible, and this consideration is one entitled to great influence.

At this time the evidence of chief value must be derived from complete and proved documents bearing on the subject, and the actual conduct of the parties.

The conveyance of the farm by Thomas Lee to Wing and McCauley in 1842, upon trust to dispose of it, to discharge liabilities and satisfy for expenses and trouble growing out of the undertakings of suretyship, is something fully settled, and it is equally clear that contingencies had in view for the trust to become effective actually occurred. The liability was no longer only possible, but real and pressing. The government was prosecuting, and threatening to prosecute further, on account of Lee's default, and he was occupying the farm. In this state of things, how did the parties act?

The defendants claim that on the 10th of July, 1847, and to further the right of Wing and McCauley to turn and convert the farm to the relief of the sureties, Lee gave the following paper:

"Whereas, Nelson H. Wing and William McCauley took a deed of my farm in the town of Dexter, June 11, 1842, to secure them against any loss arising from being my surety as receiver of public moneys at Green Bay, I hereby certify that Nelson H. Wing has expended in said suit, at my request, the sum of twelve hundred and twenty-five dollars, in defending said suit; said farm was deeded to said Wing and McCauley expressly to bear the burden for expenses as well as their liability. I have consulted said Wing in all the expenditures in this case, and said expenditures have been made with my consent; and it was distinctly understood that said expenses were to be realized from the said farm at any time said Wing or McCauley chose, by sale of said farm, by private sale or auction, optional with said Wing or McCauley.

"THOMAS LEE."

The genuineness of this instrument has, however, been controverted by complainants, and we may pass it for the present.

The government having levied its execution against Lee upon the farm, and having filed a bill in aid of the execution, Wing and McCauley answered, setting up their rights as beneficiaries under the conveyance of 1842, and also setting up that Joseph Arnold, a co-surety, was also in fact a beneficiary with them, and to this answer, and in support of it, Thomas Lee, on the 4th of December, 1847, appended his affidavit, in which he swore that he had heard this answer read and knew the contents, and further, that the old conveyance of 1842, was made by him to indemnify Wing, McCauley and Joseph Arnold against any expenses they or either of them might be put to in consequence of the suretyship of any or either of them on his official bonds as receiver of public money, and for the further purpose of saving all and each of them harmless from any liability to the United States in consequence of their or either of their suretyship on such bonds.

It does not appear that any final decree on the merits was given in this case, but shortly after, and on December 22d, 1847, the government assumed to sell Lee's interest on the execution upon its own bid. No movement appears to have been made by the government to disturb Lee, who was in possession.

On the 31st of May, 1849, he took a written lease of the farm for one year from Wing and McCauley, and agreed to pay two hundred dollars rent and yield up possession at the end of the term.

On the 21st of November, 1849, the government conveyed to one Timothy Stillman, but this conveyance being thought defective, another was made February 13th, 1864.

On the 2d of September, 1850, Evander T. Williams obtained conveyance from Stillman.

Shortly after the expiration of the lease taken by Lee from Wing and McCauley, and prior to the conveyance from

Stillman to Williams, namely, on the 28th of June, 1850, Wing and McCauley deeded to Ebenezer Arnold, the son of Joseph Arnold, and elder brother of defendant, William H. Arnold. He was a member of Joseph Arnold's family, and had no family of his own. In the fall of 1849 he had visited Washington, and made an ineffectual effort to obtain a conveyance from the government. This occurred after Thomas Lee had taken the lease from Wing and McCauley, and whilst the term of that lease was running.

Shortly after this deed from Wing and McCauley to Ebenezer Arnold, and after the lease from Wing and McCauley ran out, namely, on the 17th of September, 1850, Lee took a lease in writing from Williams for six and a half months, and agreed to render possession at the end of that time.

In point of fact, Lee appears to have continued in occupation of the farm during these periods.

The bill alleges that Lee *held possession* of the land *until after* the execution and delivery of the deeds from Wing and McCauley to Ebenezer Arnold, and *then delivered possession thereof to said Ebenezer Arnold.*

In answering, William H. Arnold denies, on information, that Lee held possession until after the deeds to him, and states on information, that before such conveyance Lee abandoned all right and claim to the premises, and was in possession under the written lease from Wing and McCauley, and that the sale by Wing and McCauley to Ebenezer Arnold had Lee's consent and approval.

Wing, in answering, denies that Ebenezer Arnold took possession from Lee as stated in the bill, and alleges that Lee had no possession when conveyance was made to Ebenezer Arnold except as tenant of Wing and McCauley. In his deposition Wing states that Lee knew of the conveyance to Ebenezer Arnold, and assented that it should be made, and declared that he would give possession at any time. And William H. Arnold swears that Lee did give up possession accordingly, and that he moved the family to DeWitt. No attempt has been made by complainants to question this

evidence as to the fact of Lee's surrender of possession to the Arnolds some little time after the deed given to Ebenezer. They examined Doctor Lee, a son of Thomas Lee, and who must have known the facts, but omitted to question him at all upon the subject.

The allegation in the bill as to the delivery of possession is somewhat ambiguous. Whether it was intended to mean that Lee at once gave up the actual occupation to Ebenezer Arnold, or that he, Lee, merely recognized a holding under Ebenezer Arnold, without shifting the actual occupation, is not very clear.

The construction due to the answers is not that Thomas Lee was not as matter of fact an occupant, but that by construction of law he was holding under Wing and McCauley.

These matters in the pleadings are not very important, because there can be no question but that Thomas Lee knew of the deed to Ebenezer, and yielded possession to the Arnolds as something they were entitled to claim after the conveyance. Wing suggests that they had been reluctant to disturb Lee in his possession, on account of his age.

We find then that Lee conveyed upon trust on account of transactions understood between the parties interested, but which transactions are not, and cannot now be clearly allotted and explained, and we also find that upon the footing of this trust covering the transactions mentioned, and which, in their individual parts and amounts were known mutually by the parties, the trustees deeded to Ebenezer Arnold with Lee's knowledge, and that he thereupon, when required, relinquished possession.

Lee having thus surrendered actual possession and removed to another county, and so far as appears without the least objection, our attention is next naturally called to his subsequent attitude.

He survived some two years, and we have no evidence that he ever set up any claim, or intimated that his right was not justly and completely extinguished. On the contrary, we have some slight affirmative evidence that he actu-

ally considered he had no right. His son, Doctor Lee testifying on the part of complainants, stated that his father, shortly before his death, and of course contemplating the disposal of whatever property he had, had a will drawn, but finally altered his mind, and instead of disposing by will, *made a deed* of some land that he owned, and never signed the will. The fair inference from the Doctor's statement is, that whatever land his father then considered himself as interested in was disposed of by the deed, and since, upon the theory of complainants' case, the land in question was not embodied in that deed, we may further infer that he did not claim any thing in the old farm, even up to the time of making a final disposal of all he had.

After balancing all the circumstances the impression made is, that under the state of things which the parties at the time knew and understood, the deed to Ebenezer Arnold was considered by all as working, and did work an extinguishment of all right in Thomas Lee, and that, well knowing the facts, he acquiesced, and that no right remained in him to go to his heirs.

But the case does not rest here. A majority of the court think that upon the whole case the evidence in favor of the genuineness of the paper of July 10th, 1847, preponderates, and hence that defendants are entitled to have the benefit of it. And with this document established, we all consider that there can be no question in regard to the correctness of the decree below, and that it should be affirmed, with costs.

The other Justices concurred.