[No. 53302-4.   En Banc.   January 28, 1988.]

THE STATE OF WASHINGTON, *Respondent*, v. LESLIE SCOTT KNIGHTEN, *Petitioner*.

*Todd M. Rutledge* and *Boettcher, LaLonde, Kleweno, Rutledge & Jahn,* for petitioner.

*Arthur D. Curtis, Prosecuting Attorney,* and *Michael C. Kinnie, Deputy,* for respondent.

CALLOW, J.—The defendant appeals his judgment and sentence for vehicular homicide and felony hit and run for the death of a young bicyclist. He appeals, assigning error to the court's refusal to suppress evidence. The Court of Appeals affirmed the convictions on the ground that the evidence was so overwhelming as to render the assumption that evidence had been wrongfully derived from an unlawful *Terry*[1] stop harmless. We affirm the result on other grounds, holding that the stop was a valid arrest rather than an unlawful *Terry* stop.

In the early morning hours of December 18, 1983, an automobile accident occurred between a vehicle owned by the defendant and a teenage bicyclist who received fatal injuries. The driver of the vehicle left the scene of the accident.

Several hours later, Clark County Deputy Sheriff Michael Evans arrived at the scene of the accident, near the intersection of county roads 42 and 48. He knew that the body of the victim had been knocked into the bushes by the impact of the collision. At the accident scene was a badly damaged bicycle and debris from an automobile which included plastic pieces of automobile grille material, pieces of chrome stripping and several flakes of black paint. The arresting officer was aware that Knighten had contacted the Battle Ground Towing Company early that morning in an effort to retrieve the vehicle. There were indications that Knighten had tried to get the car out of the ditch before the tow truck came, that when he was unsuccessful he had borrowed a 4-wheel drive vehicle to do this, and that when he returned to the scene the car had been removed. The deputy was informed by other law enforcement officers that Mr. Knighten's automobile, which had been stuck in a roadside ditch near the deceased, had been towed away at the direction of law enforcement officers. Lori Benfit, the town marshal of La Center, Washington, informed Deputy Evans that the defendant Knighten had been driving the

---

[1] *Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

automobile when it went into the ditch.

While examining the scene of the fatality with Deputy Evans, Marshal Benfit observed and recognized Knighten in a pickup truck which had passed by the investigation area. She informed Deputy Evans, who, in a patrol car with another deputy, pursued Knighten and stopped the vehicle within a short distance.

When Knighten and a companion, John Fehr, were stopped in the pickup truck Deputy Evans knew that Mr. Knighten's vehicle had been ditched at the scene of the fatality, that he had been operating the vehicle the previous evening, that a person had been killed at the scene while bicycling on the highway, and that whoever had struck the victim had not stopped or rendered assistance. Deputy Evans did not believe he had probable cause to arrest the defendant but he ordered the two passengers, John Fehr and Knighten, to exit the truck and kneel on the pavement. We find that the deputy was mistaken in his conclusion that he did not have probable cause to arrest Knighten at that moment. While the second deputy's gun was drawn, the two deputies handcuffed and frisked both individuals. Once secured, the two men were placed in different patrol cars.

Deputy Evans advised Fehr of his *Miranda*[2] rights after which Fehr stated that Knighten had ditched his auto the prior evening and that Knighten and he had unsuccessfully attempted to remove the vehicle in the early morning hours. Deputy Evans then advised Knighten of his *Miranda* rights. Knighten waived his rights and confessed that during the prior evening he had driven while intoxicated and had accidentally ditched his vehicle. Concluding only then that they had probable cause to arrest Knighten, the deputies released Fehr and transported Knighten to the Clark County Jail. While detained, Deputy Evans readvised Knighten of his *Miranda* rights. Knighten again agreed to

---

[2]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

discuss the accident and described in more detail how the accident occurred and how much alcohol he had consumed before driving his vehicle that evening. The deputy terminated questioning when Knighten's attorney telephoned and requested that the interview end.

■ The elements of probable cause to arrest are well settled.

> Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense has been or is being committed.

*State v. Gluck,* 83 Wn.2d 424, 426–27, 518 P.2d 703 (1974). This standard was reiterated in *State v. Fricks,* 91 Wn.2d 391, 398–99, 588 P.2d 1328 (1979), where Justice Horowitz relied and expanded upon *State v. Gluck, supra,* stating:

> The determination will rest on the totality of facts and circumstances within the officer's knowledge at the time of the arrest. The standard of reasonableness to be applied takes into consideration the special experience and expertise of the arresting officer.

(Citations omitted.) *See also State v. Scott,* 93 Wn.2d 7, 604 P.2d 943, *cert. denied,* 446 U.S. 920 (1980); *State v. Goodman,* 42 Wn. App. 331, 711 P.2d 1057 (1985).

In the present case, it was clear to Deputy Evans that an offense had been committed. An individual had been struck and killed by a motor vehicle on a public roadway and the vehicle's driver did not remain on the scene, assist the victim or report the accident. In addition, the knowledge that a black vehicle belonging to the suspect Knighten had been removed from the ditch directly across from the body, combined with the statement of another law enforcement officer to the effect that Knighten had been driving the vehicle at the time it went into the ditch, provided sufficient probable cause to believe that Knighten was the driver who struck the deceased and failed to remain on the accident scene or render assistance. Therefore, Deputy Evans' actions in stopping and detaining Knighten were

justified as a valid arrest under either one or all of the following statutes. RCW 46.61.520 (vehicular homicide) which reads:

(1) When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person while under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502, or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle is guilty of vehicular homicide.

(2) Vehicular homicide is a class B felony punishable under chapter 9A.20 RCW.

or RCW 46.61.522 (vehicular assault) which reads:

(1) A person is guilty of vehicular assault if he operates or drives any vehicle:

(a) In a reckless manner, and this conduct is the proximate cause of serious bodily injury to another; or

(b) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502, and this conduct is the proximate cause of serious bodily injury to another.

(2) "Serious bodily injury" means bodily injury which involves a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body.

(3) Vehicular assault is a class C felony punishable under chapter 9A.20 RCW.

or RCW 46.52.020 which reads in part:

(1) *A driver of any vehicle involved in an accident resulting in the injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to, and in every event remain at, the scene of such accident until he has fulfilled the requirements of subsection (3) of this section;* . . .

. . .

(3) Unless otherwise provided in subsection (7) of this section *the driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person or damage to other property* shall give his name, address, and vehicle license number and shall exhibit his vehicle

driver's license to any person struck or injured or the driver or any occupant of, or any person attending, any such vehicle collided with and *shall render to any person injured in such accident reasonable assistance, including the carrying or the making of arrangements for the carrying of such person to a physician or hospital for medical treatment if it is apparent that such treatment is necessary . . .*

(4) *Any driver covered by the provisions of subsection (1) of this section failing to stop or comply with any of the requirements of subsection (3) of this section under said circumstances shall be guilty of a class C felony and, upon conviction, be punished pursuant to RCW 9A.20.020: . . .*

. . .

(7) If none of the persons specified are in condition to receive the information to which they otherwise would be entitled under subsection (3) of this section, and no police officer is present, the driver of any vehicle involved in such accident after fulfilling all other requirements of subsections (1) and (3) of this section insofar as possible on his part to be performed, shall forthwith report such accident to the nearest office of the duly authorized police authority and submit thereto the information specified in subsection (3) of this section.

(Italics ours.)

It may be that the existence of probable cause to arrest for a violation of RCW 46.61.520 or .522 is tenuous (even though all that is required as an element is the reckless operation of a vehicle which proximately causes death or serious bodily injury of another), but the existence of probable cause to arrest for a violation of RCW 46.52.020, known as felony hit and run, is obvious, clear and patent. It is also clear that the requirement that probable cause must be present before an arrest for a felony can be made exists not as a test of the legal knowledge of the arresting officer or of the acumen of the prosecutor, but as a protection of the civil rights and freedom of the citizen–suspect. If the citizen's rights were not violated, there is no basis for setting aside statements made after a lawful arrest.

The State *conceded* that no probable cause to arrest

existed at the time Knighten was detained. However, if the State's determination of probable cause was erroneous, this court is not bound by that determination. This principle was clearly stated in *Dettore v. Brighton Township,* 91 Mich. App. 526, 534, 284 N.W.2d 148, 151 (1979):

> Plaintiff on appeal characterizes defendant's statement as a binding admission in its pleadings. See GCR 1963, 606. On the contrary, it is well established that *a party concession or admission concerning a question of law* or the legal effect of a statute as opposed to a statement of fact *is not binding on the court.* 2 Callaghan's Michigan Pleading & Practice (2d Ed), § 21.44, p 43; *Thayer v Arnold,* 32 Mich 336, 341 (1875). Cf., *Michigan Health Care Inc v Flagg Industries, Inc,* 67 Mich App 125, 130; 240 NW2d 295 (1976).

(Italics ours.)

This court has relied on the same principle. In reply to an argument that a party had conceded a point of law, we declined to consider whether the point had been conceded on the grounds that an erroneous concession would not be binding on the court. We said in *In re Estate of Dunn,* 31 Wn.2d 512, 528, 197 P.2d 606 (1948):

> Whether or not such a concession was made is unimportant, and, of course, this court is nowise bound thereby, the question being one of law to be determined from admitted facts.

The principle has been applied in a criminal context as well. As stated in *People v. Dodson,* 96 A.D.2d 1116, 1118 n.*, 467 N.Y.S.2d 709, 712 (1983):

> We reach this conclusion despite the concession by the People in their brief that criminal trespass in the first degree is a lesser included offense of burglary in the first degree *since we are not bound by erroneous concessions of legal principles.*

(Italics ours.)

The State's concession was erroneous. Deputy Evans had sufficient probable cause to arrest Knighten at the time he was stopped and detained. Knighten's detention was not a

*Terry* stop, but a valid arrest. While the overly zealous and rough actions of the officer making the arrest were unnecessary, the arrest was proper. *State v. Wheeler,* 108 Wn.2d 230, 737 P.2d 1005 (1987) does not require courts to evaluate whether felony arrests were conducted with proper manners and gentility, but only whether the procedures were inappropriate. Here a teenage boy had been killed and the appearances were such that the officer could have believed that the defendant had failed to render assistance and had tried and was trying to avoid arrest. It cannot be said that the arrest was contrary to good police practice and common sense.

The standard for probable cause to arrest has been defined and should not be confused with the higher standard for conviction that the State must prove each element of the crime beyond a reasonable doubt. *State v. Cox,* 94 Wn.2d 170, 615 P.2d 465 (1980); *State v. Tanzymore,* 54 Wn.2d 290, 340 P.2d 178 (1959); RCW 9A.04.100. The arresting officer needed only to have facts and circumstances within his knowledge sufficient to cause a reasonable person to believe that an offense had been committed. He did not, at the time of arrest, need to have at his command the evidence to prove each element of the crime beyond a reasonable doubt.

Because the detention of Knighten was proper as a lawful arrest, there is no taint of illegality upon any evidence obtained through voluntary statements made by Knighten while in custody. Deputy Evans took all proper precautions to ensure that statements obtained from Knighten were freely and voluntarily given. Before questioning Knighten, Deputy Evans read him the standard *Miranda* warnings from form 386, which is issued to Washington State law enforcement officers for that purpose. At the suppression hearing, Deputy Evans was questioned by the deputy prosecutor and testified as follows:

Q Very well, could you read into the record the exact language that you read to Mr. Knighten at that time?

A Yes, sir. "You have the right to remain silent during any questioning." At this point I asked Knighten if he understood that.

Q Did he respond?

A He said "Yes."

Q Very well.

A Next, I said, "Anything you do say can and will be used against you in a court of law." After that point I asked him if he understood, and he said "Yes." The next point is, "You have the right to talk to an attorney prior to any questioning and to have your attorney with you during questioning. If you cannot afford an attorney, one will be appointed for you at public expense prior to any questioning, if you so desire." At that point I asked him if he understood that, and he answered "Yes."

Q Very well.

A The next point was, "If at any time during questioning you indicate a desire not to answer further questions or to consult with or have an attorney present during further questioning, then questioning will cease." I asked him if he understood that point, and he also replied "Yes." On the back side of the card the next statement is, "Do you understand each of these rights I have explained to you," and his answer was "Yes." The next point is, "Having in mind and understanding your rights as I have explained them to you, are you willing to talk to me at this time?" And his answer at that point was "Yes."

Report of Proceedings, at 17–18.

At that point, Knighten waived his rights and began telling the officers about the events of the previous night. He admitted that he had been drinking the night before and was probably too intoxicated to drive safely. He said that he had split two or three pitchers of beer with another individual. He stated that he had been traveling too fast, between 50 and 60 miles per hour, when he turned too widely and put his vehicle in the ditch. He also gave information which led to additional witnesses.

That evening while Knighten was being held in custody, Deputy Evans again read Knighten his *Miranda* rights and Knighten made more detailed statements concerning the

amount of alcohol he had consumed the night before. He then said that he had consumed two mugs of beer while playing video games at the Podunk Tavern, and thereafter he then went to the La Center Tavern where he consumed six to seven glasses of beer. He and an individual he knew as "Bill" then drove to a liquor store where Knighten purchased a 16–ounce container of Black Velvet from which he drank approximately three shots. They returned to the La Center Tavern where they split a pitcher of beer. The two then went to Bill's house where they continued drinking. Knighten admitted that he did not recall leaving Bill's house and only remembered waking up on the floor of his own home and being told that he had put his car in the ditch.

There is no evidence that any force or coercion was exerted upon Knighten to make the statements that he did. The second interview was interrupted when an attorney retained by Knighten's parents telephoned asking to speak with Knighten. On the advice of the attorney, Knighten informed Deputy Evans that he did not wish to answer any further questions and the interview was terminated.

Knighten's statements to Deputy Evans, both immediately after he was taken into custody and later that evening, were freely and voluntarily given. Indeed, Knighten does not even argue that the statements were involuntarily made, but relies solely on the argument that they were tainted by an unlawful *Terry* stop. Since Knighten's detention was not a *Terry* stop but a lawful arrest based upon probable cause, there was no taint upon the statements made to Deputy Evans. The admission of those statements into evidence was entirely proper. The Court of Appeals opinion upheld the convictions based upon the "overwhelming untainted" evidence saying:

> The untainted evidence revealed Mr. Knighten operated the vehicle which fatally injured the bicyclist, and that Mr. Knighten was intoxicated at the time of the accident. Mr. Fehr disclosed that Mr. Knighten had ditched the vehicle the prior evening and had unsuccessfully

attempted to remove the vehicle. Rebecca Kelley, a barmaid in La Center, said she refused to serve Mr. Knighten intoxicants the evening of the accident because he was too intoxicated. Witnesses saw Mr. Knighten at the scene of the accident and one witness, who drove Mr. Knighten home from the accident, observed that Mr. Knighten was intoxicated.

The Court of Appeals need not have based its affirmance on this ground in view of the probable cause to arrest that existed. The plain language of RCW 46.52.020 makes it a *felony* to leave the scene of an accident without rendering assistance to any victim. This statute is designed to impose responsible action toward others upon drivers. Here it is plain that the defendant shirked that responsibility and that the injured or killed teenager lay for hours at the scene of the accident possibly dying for lack of assistance. The convictions are affirmed.

ANDERSEN, GOODLOE, and DURHAM, JJ., concur.
BRACHTENBACH, J., concurs in the result.

PEARSON, C.J. (dissenting)—I dissent. Deputy Evans did not have probable cause to arrest Mr. Knighten at the time he stopped the vehicle. The stop was clearly beyond the scope of a *Terry* stop. Admission of the tainted evidence was not harmless error.

Deputy Evans did not believe he had probable cause to arrest the defendant when he ordered the two passengers from the truck. The prosecution still concedes at the time of this appeal that probable cause did not exist to arrest Mr. Knighten upon his initial detention. The trial judge concluded that the stop was an investigatory stop. The Court of Appeals held the officers lacked probable cause to arrest when the stop was made. This court for the first time concludes that probable cause existed. In an unpublished opinion, the Court of Appeals held, "When Mr. Fehr and Mr. Knighten were stopped, Deputy Evans knew only that Mr. Knighten's vehicle had been ditched, and that he had been operating the vehicle the previous evening. *There was*

*no indication he had been driving the vehicle when the accident occurred."* (Italics mine.) *State v. Knighten,* noted at 44 Wn. App. 1017 (1986). The majority now finds Deputy Evans had knowledge that Mr. Knighten was driving at the time of the accident. The record simply does not support this finding of fact. The prosecution proffered a finding (based on testimony at the suppression hearing) which read, "Deputy Evans was advised that Leslie Scott Knighten had been driving the car at the time of the fatal accident." However, the trial court struck the portion of the finding that read, "at the time of the fatal accident." Clerk's Papers, at 24 (finding of fact 2). This court should not ignore the trial court's unchallenged findings of fact to make its own factual determinations. Credibility is within the discretion of the trial judge. *State v. Alferez,* 37 Wn. App. 508, 510, 681 P.2d 859 (1984). Therefore, the Court of Appeals was correct that just prior to the initial stop the officer did *not* have knowledge that defendant was driving at the time of the accident. It is not the province of this court to evaluate the record to make factual determinations in the face of unchallenged findings by the trial court. The State made no assignment of error in regard to this finding. An unchallenged finding of fact is accepted as a verity on appeal. *Metropolitan Park Dist. v. Griffith,* 106 Wn.2d 425, 433, 723 P.2d 1093 (1986). In light of the trial court's findings of fact, the majority is wrong when it finds probable cause based on the officer's knowledge that defendant was driving the car at the time of the accident. The majority's statement of facts also states, "There were indications that Knighten had tried to get the car out of the ditch before the tow truck came, that when he was unsuccessful he had borrowed a 4-wheel drive vehicle to do this, and that when he returned to the scene the car had been removed." Majority opinion, at 897. However, the arresting officer did not have this information prior to stopping Mr. Knighten. Report of Proceedings, at 8-11; Clerk's Papers, at 24 (finding of fact 2). Of course, only the facts known to the officer at the time of the detention are relevant to the Fourth

Amendment issues of the lawfulness of an arrest or a *Terry* stop.

The arresting officer, the prosecutor, the trial court and the Court of Appeals were correct that there was no probable cause to arrest at the time the vehicle was stopped.

The majority recognizes that the State conceded no probable cause to arrest existed at the time Mr. Knighten was detained. The State's brief in this court still concedes that fact. The majority, however, relying on dubious precedent, concludes that this court may ignore that concession. Certainly a criminal defendant should have the opportunity to argue what is the determinative constitutional issue in his case. Here, the prosecution's concession that there was no probable cause to arrest may have led the defendant into believing he would not have to persuade the court on this issue. A defendant faced with such a concession may focus his arguments on other questions. Here, defendant focused his arguments on the fact that his detention exceeded the scope of a *Terry* stop. If a prosecutor concedes one constitutional issue, the defendant is led to believe he needn't investigate nor fully argue that point. If later this court ignores such a concession and without even requesting additional briefing determines the entire case on that issue, then the defendant has not received a fair opportunity to present his arguments to this court. RAP 12.1 sets forth a procedure for this court to request additional briefing:

> **(a)** . . . Except as provided in section (b), the appellate court will decide a case only on the basis of issues set forth by the parties in their briefs.
>
> **(b)** . . . If the appellate court concludes that an issue which is not set forth in the briefs should be considered to properly decide a case, the court may notify the parties and give them an opportunity to present written argument on the issue raised by the court.

Because the briefs do not sufficiently address the issue of probable cause to arrest at the time of the initial stop, and because the State's brief concedes that probable cause to

arrest defendant did not exist upon his initial detention, I would at least give the parties the opportunity to brief the issue.

The State argues that although the officers lacked probable cause when they stopped Mr. Fehr's vehicle, at some time during that stop probable cause was established. The flaw in this argument is that the stop had already exceeded the proper scope of a *Terry* stop when the officers obtained enough information to constitute probable cause. Mr. Knighten was handcuffed and locked in a police vehicle before the officers obtained information from Mr. Fehr which the State argues established probable cause to arrest. This court answered this very argument in *State v. Williams,* 102 Wn.2d 733, 742, 689 P.2d 1065 (1984) when it stated:

> The Court of Appeals also recognized that at some point the police actions constituted an arrest, but concluded that this took place *after* the police acquired sufficient evidence for probable cause to make an arrest. We disagree. As evident from the facts recited above, from the outset of this police/citizen encounter, the police actions exceeded those permitted under *Terry.* Since, as respondent admits, no probable cause existed when petitioner was first detained, the detention was illegal. As the evidence admitted in petitioner's trial was a fruit of this illegal detention, it must be suppressed. *See State v. White,* 97 Wn.2d 92, 101, 640 P.2d 1061 (1982).

The Court of Appeals correctly held that defendant's detention exceeded the permissible scope of a *Terry* stop and defendant's confessions should have been suppressed. In upholding the conviction based on a finding of probable cause, the majority also impliedly recognizes that the stop of Mr. Knighten was beyond the proper scope of a *Terry* stop. Although the officers were justified in stopping Mr. Knighten, based on a reasonable suspicion he had left the scene of a fatal accident, *see* RCW 46.52.020, they were not justified in the intrusive measures employed. The scope of a *Terry* stop, or the extent of the intrusion, must be reasonable in light of the particular facts known to the police at

the time of the stop. *See State v. Williams, supra; see also State v. Wheeler,* 108 Wn.2d 230, 235, 737 P.2d 1005 (1987). The investigative methods used by the police must be the least intrusive means reasonably available to verify or dispel the officers' suspicions in a short period of time. *Williams,* at 738 (citing *Florida v. Royer,* 460 U.S. 491, 500, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983)). The degree of this intrusion must be appropriate to the type of crime under investigation and to the probable dangerousness of the suspect. *Wheeler,* at 235 (citing *Williams,* at 740). In this case police had no reason to believe defendant might be armed. Although a death was involved, there was no basis for believing the death was caused by an intentional act or that any intentional violent crime was involved. *Cf. United States v. Hensley,* 469 U.S. 221, 83 L. Ed. 2d 604, 105 S. Ct. 675 (1985) (officers drawing guns when stopping armed robbery suspect). The officers believed they were investigating a traffic fatality. In addition, they were aware of defendant's identity, and they knew he was a local resident. They had no reason to believe he would immediately flee the jurisdiction. In the absence of any exigencies which might justify their response, the police acted improperly first in ordering defendant to kneel on the pavement and then in handcuffing and secluding him in the police vehicle. *Cf. State v. Wheeler, supra* (officers handcuffing unknown suspect believed to be involved in burglary).

The Court of Appeals correctly concluded defendant's confessions should have been suppressed as fruits of the unlawful stop. *See Dunaway v. New York,* 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979); *Brown v. Illinois,* 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975). The fact that *Miranda* warnings were administered prior to the confessions did not immunize the confessions from the taint of the Fourth Amendment violation; the warnings primarily served to protect only against a Fifth Amendment violation. *See Brown,* at 601–03. Courts admittedly may take *Miranda* warnings into account in deciding whether confessions are "'sufficiently an act of free will to purge the pri-

mary taint" of an illegal seizure. *Brown,* at 602 (quoting *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963)). But a court must find more than mere voluntariness to rid a confession of the taint of illegality. Factors to be considered in determining whether a sufficient break has occurred between a Fourth Amendment injury and a confession include the "temporal proximity of the arrest and the confession, the presence of intervening circumstances . . . and . . . the purpose and flagrancy of the official misconduct". (Footnotes omitted.) *Brown,* at 603–04. In this case, defendant's first confession occurred within a few minutes of his detention, while he remained handcuffed and secluded in the patrol car; the confession was a direct and immediate consequence of the constitutional violation. The second confession, though a number of hours later, resulted from no significant intervening event. Defendant remained in custody throughout the entire interval, including during his trip to the hospital. This was not a situation where a suspect is released from custody and voluntarily returns to give a statement, or where a suspect speaks with his attorney prior to giving the statement.

After the Court of Appeals concluded there was no probable cause to arrest, and that the detention exceeded the permissible scope of a *Terry* stop, it examined whether the trial court's failure to suppress defendant's confessions was prejudicial. The court concluded that the independent evidence of defendant's guilt was overwhelming, and as a consequence the trial court's error was harmless. It is this portion of the Court of Appeals ruling that defendant challenges.

A constitutional error is harmless only when "the appellate court is convinced *beyond a reasonable doubt* that any reasonable jury would have reached the same result in the absence of the error." (Italics mine.) *State v. Guloy,* 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020 (1986). The court must weigh only untainted evidence, and it may find the error harmless only when the untainted evidence "is so overwhelming that it *necessarily*

leads to a finding of guilt." (Italics mine.) *Guloy,* at 426.

Assuming for the moment that defendant's confessions comprised the only tainted evidence, we cannot agree that the remaining evidence would have necessitated a finding of guilt of vehicular homicide.

Defendant's confessions indicated he had made too wide a turn at the intersection where the collision occurred. This fact went to the issue of proximate cause. The defense's theory of the case was that the victim's negligence, and not any act of Mr. Knighten, proximately caused the accident. In support of this theory, two defense witnesses testified that shortly before the accident they had seen the victim riding his bicycle and wearing dark clothing with a fur–fringed coat hood drawn tightly around his face and that the victim's bicycle had no lights or reflectors. The defense also produced an engineering consultant who testified that in his opinion the collision could have occurred in the middle of the road. There was testimony the speed limit on that road was 50 m.p.h. The State's evidence of proximate cause consisted only of the expert testimony of Deputy Evans, who stated that in his opinion the collision had to have occurred in the gravel turnout.

In the absence of defendant's admission that he took the turn *too* wide, we cannot characterize the State's evidence of proximate cause as overwhelming. The jury was entitled to believe Deputy Evans, and it had sufficient evidence to decide defendant proximately caused the collision. However, although there was sufficient evidence from which a jury *could* conclude defendant was guilty beyond a reasonable doubt, we cannot say a jury necessarily *would* so conclude. *See Guloy,* at 426. "Constitutional error is presumed to be prejudicial and the State bears the burden of proving that the error was harmless." *Guloy,* at 425. Defendant's conviction therefore should be reversed.

Even if Mr. Knighten's confession was believed not to be prejudicial, any decision the error was harmless would have been premature. Mr. Knighten contends the taint of the unlawful stop extended past his confessions and encom-

passed other evidence. According to defendant, information in his confessions led the police to question several persons who later testified for the State. Defendant argues this testimony, which was relevant to his intoxication, also should have been suppressed.

The issue of the exclusion of witness testimony deriving from a Fourth Amendment violation of a defendant's rights has been examined by other courts. *See, e.g., United States v. Ceccolini*, 435 U.S. 268, 55 L. Ed. 2d 268, 98 S. Ct. 1054 (1978). Arguably, witness testimony, like confessions, must manifest a sufficient break from the Fourth Amendment violation to be admissible. However, this issue was not considered below, and any review must await consideration and findings of fact by a trial court.

Because there was no probable cause to arrest and the stop exceeded the permissible scope of a *Terry* stop, and because there was not overwhelming evidence of defendant's guilt of vehicular homicide, the erroneous admission of his confessions was prejudicial error.

UTTER, DOLLIVER, and DORE, JJ., concur with PEARSON, C.J.

Reconsideration denied March 31, 1988.